Russell Blakeley

*vs.*

W. G. Le Duc.

A stage company undertook to transport M in their line.of coaches over a route of which defendant's ferry formed a part, being a ferry authorized by law across the Mississippi river at Hastings.   While the coach was passing upon the ferry-boat, (or having gotten wholly upon it,) the fastening of the boat to the shore, being insecure, gave way; the boat swung out from the bank; the hind wheels dropped down into the water; the lifting up of the coach by their dropping down, caused it to uncouple from the forward axle; it came back into the river, and M, being in it, was drowned.

The stage company having been compelled to respond in damages for his death, this action was brought to recover an indemnity therefor of the defendant.   *Held*, that, under the pleadings in this case, evidence of contributory negligence on the part of the stage company, was admissible; but that, if otherwise, if such evidence were admitted without objection, contributory negligence being a proper issue to be made in such a case, the court would be justified in directing the jury to take the evidence into consideration.

It was proved that the ferryman told the driver he was ready and to drive on; that the driver drove on, the ferryman taking the leaders by the head and leading them on.   *Held*, that whether the hind wheels were on the boat or not at the time of the accident, there had been a delivery to the ferryman, and the coach was in his possession and charge.

If the ferryman removed the ferry-boat from the place of its usual crossing to the crossing where the accident occurred, and was running it there at the time, but in so doing acted without authority from the ferry-owner, this would not bar a recovery against such ferry-owner for the ferryman's neglect.

Blakeley v. Le Duc.

The ferry-owners were bound to provide safe and secure fastenings for the boat, and the stage company had a right to assume that they would do so. The question of contributory negligence, therefore, would not require the jury to inquire into the condition of the coach in respect of its liability, under such circumstances as above stated, to uncouple; nor as to whether it had lights on it or not; nor into the knowledge of the stage company of the situation of the ferry in respect of its being a safe or dangerous place to cross.

If the evidence proved that the ferryman told the stage agent at the time, and before taking the coach into his possession, that the fastening of the boat was unsafe, it would be for the jury to consider, with reference to the question of contributory negligence, whether, under all the circumstances, it was a want of ordinary care on the part of the stage agent to entrust the coach to the ferryman for transportation without examining such fastening and testing its sufficiency. But, after the coach had been entrusted to the ferryman, the question of contributory negligence would not require the jury to inquire into the management of the stage company's employees in driving upon the ferry.

The defendant requested the court to instruct the jury, that if the shore fastening of the ferry was not safe, and the agent of the stage company knew its character, or if it was dangerous approaching and getting on to the ferry, and so known to the driver or agent of the stage company then present, it was the duty of the driver or stage agent to have so informed the passengers, in order that they might get out; and if such notice was not given, it was negligence on the part of the stage company; which the court read to the jury and then added, "upon this point, gentlemen, I shall leave it to the jury to say, under all the circumstances of the case as they appear in evidence, whether the care and diligence required of the stage company, as already explained to you, required them to give such notice to the passengers. If it did, and they failed to give such notice, and such failure contributed to the injury, the plaintiff cannot recover." *Held* to be erroneous. Knowledge of the character of the fastening might have a bearing upon the question, as to whether the agent was guilty of negligence in entrusting the coach, as he did, to the ferryman; but after the delivery, the stage company had no duty to perform toward the ferry-owner in the way of notifying the passengers. That the approach to the ferry was dangerous had nothing to do with the question of contributory negligence; nor that it was dangerous getting on to the ferry-boat, the getting on being in the ferryman's hands, and not the stage company's.

Blakeley v. Le Duc.

Testimony that the stage agent said, after the accident, that he "was to blame for the removal of the ferry-boat" from its usual place of crossing, had no tendency to prove that it was in the stage company's charge at the time of the accident, nor was such removal, though the act of the stage company, contributory negligence.

The plaintiff in this action was one of the defendants in the suit of *McLean vs. Burbank, et al.* reported 11 *Minn.* 277, and 12 *Minn.* 530, and is an assignee of the other defendants therein. Having paid the amount of the judgment recovered in that suit, he brought this action in the district court for Ramsey county to recover from the defendant the damages thereby sustained by him.

This appeal is taken by the plaintiff from the order of the district court denying his motion for a new trial after verdict for the defendant, and from the judgment entered upon the verdict.

The opinion contains a full statement of the facts of the case, and the exceptions taken at the trial.

ALLIS, GILFILLAN & WILLIAMS and BRISBIN & PALMER, for Appellant.

J. M. GILMAN, for Respondent.

*By the Court.*—RIPLEY, CH. J.—This action is brought to recover from the defendant an indemnity in respect of the damages, which the plaintiff and others, his assignors, and their copartners with him, under the firm name of the Minnesota Stage Company, have been adjudged to pay, and which plaintiff has since paid, to the administratrix of Matthew McLean, who was drowned while crossing a ferry owned by defendant and others, in one of the stage company's coaches in which he had taken passage. As to McLean, the owners of the ferry were the agents and employees of the stage com-

pany, and the latter were responsible to him, for the acts and neglect of the ferryman, or ferry owners, as for any other employee or agent of theirs.  *McLean vs. Burbank*, 11 *Minn.* 71.  As between the stage company and the owners of the ferry, however, the former occupied the same position towards the latter as would any other traveler, who had hired them under the same circumstances and for the same purposes. The stage company might be liable to McLean in respect of matters which the owners of the ferry could not set up against the stage company in this action, *e. g.*, the stage company would be liable to McLean for an injury solely occasioned by the negligence of the ferryman.

The owners of the ferry would be responsible to this stage company, as to any other traveler, for any injury sustained through the negligent performance of their undertaking to transport said coach across said ferry, whether such injury consisted in the liability they incurred towards McLean, or an injury to the coach and horses, unless by their own ordinary negligence or willful wrong, as between them and the owners of the ferry, they proximately contributed to produce such injury.  Their negligence, or other fault, is of no importance, if it did not contribute, as between them and the ferry-owners, to bring upon them the injury, of which they complain.  The ferry-owners would not be excused by any negligence of the stage company, which did not amount to a want of ordinary care, as between them and the ferry-owners, in avoiding the consequences of defendant's negligence.  *Shearm. & Redf. on Negligence*, §§ 25, 32.

The ferryman testified that " the stage stopped once before it got to the ferry, * * about 15 or 20 yards distant from the ferry ; some one, either the agent or the driver, asked if I was ready   The agent accompanied the driver and stage.  I told him I was ready.  The driver in charge drove on ; I took

hold of the horses and led them on; took the leaders by the head. When he drove the horses on I had a lantern in one hand, belonging to the stage agent, and held the horses with the other hand to lead them to the usual place of stopping. When the leaders got to the place of stopping, they backed up, and I found that the hind wheels had dropped off from the end of the boat; the boat moved out from the shore; whether the hind wheels were ever on the boat, or dropped off, I can't say; my impression is they got on and dropped off."

The ferryman's boy also testified that he knew "that the hind wheels went on the boat and then came back."

The stage agent says that " the ferryman told the driver to come on; the driver started on to the boat; the horses went on, and I felt quite a jar when the front wheels struck the boat as they went on. When the hind wheels struck the boat, I felt the upper corner of the boat, where it was fastened to the stone, give way. The boat went out. I saw the coach kind of drop back; the hind wheels dropped down into the water."

This is perhaps conflicting as to whether or not the hind wheels were ever on the boat; but, assuming that the defense set up in the answer as hereinafter stated, viz.: that the stage company and not the ferry-owners, had undertaken to ferry the coach, etc., across, to be unfounded, this evidence, we think, establishes a delivery of the coach, etc., to the ferry-owners, and that it was in their charge, whether the hind wheels ever got on the boat or not. *Cook v. Gourdon*, 2 *Nott & McCord*, 19 ; *Miles v. James, et al.*, 1 *McCord*, 157 ; *Cohen v. Hume*, 1 *McCord*, 439.

The evidence also tends to prove, that when the hind wheels struck the boat, the shock caused the stone, round which the rope attached to the upper end of the boat was fastened, to roll over, the rope slipped off, the boat swung out from the

bank, and the hind wheels dropped down into the water. The lifting up of the coach by this dropping down of the wheels, necessarily caused it to uncouple from the forward axle; it came back into the river, and McLean, being in it, was drowned. That the boat was insecurely fastened is beyond doubt. That it was the act of the ferryman, and the primary cause of the injury, is also certain. The ferry owners, therefore, if they and not the stage company were operating the ferry, are liable to the plaintiff in this action, unless the injury was the result, as above explained, of the mutual neglect of the parties. The plaintiff, indeed, insists that the question of contributory neglect does not arise on the pleadings; that there is no issue here, excepting as to whether the ferryman was the agent of the stage company or of the ferry owners.

The answer for a defense avers, in substance, that the stage company, and not the ferry-owners, had taken the charge and control of the ferry boat, and of the transportation of McLean thereon, and while so in charge, the accident occurred by their negligence; and describes the occurrence in the same way as the complaint, except that it is alleged to have occurred by the negligent management of the stage company instead of the defendant. It admits, in thus answering, that the cause of the injury was the giving way of the fastenings. It also, however, contains a general denial of the allegations of the complaint, except as to such as are admitted as above stated. It also denies the allegation that the stage company failed to carry McLean safely according to their undertaking, as set out in the complaint, by reason of any negligence of the defendant. It also avers that all and singular the acts and negligence, by which McLean came to his death, were the acts and negligence of the stage company.

While the answer is very loosely drawn, it seems to us that evidence to prove contributory negligence would have been

admissible under the pleadings. *Johnson vs. Hudson River R. R. Co.* 5 *Duer.* 21.

But if we are mistaken in this, still if, upon evidence admitted without objection, such negligence appeared, the court, inasmuch as contributory negligence would have been a proper issue in such a case as this, would be justified in directing the jury to take such evidence into consideration. *Taylor vs. Parker*, 17 *Minn.* 469.

In this case all the evidence touching the transaction was not only admitted without objection, but was in great part introduced by the plaintiff himself. The ferryman, indeed, was allowed to testify, against plaintiff's objection, that the stage agent with his help removed the boat, some days before the accident, from its ordinary place of mooring; that he had refused, at some time between the removal and accident, to ferry the stage across at the point to which the boat was removed, for the reason that he considered it a dangerous place to cross; and another witness was allowed to testify that the ferryman told the agent, while the boat was removing, that it was a dangerous place to cross, and that he would not ferry the stage on his own responsibility; but, as will appear from what is hereinafter said, this had no tendency to prove contributory negligence.

The plaintiff's first request to charge was as follows, viz.:

" If the jury find that the defendant undertook to carry the stage across the river, and the injury resulted from the negligence of the defendant, or his agents or employees, they must find for the plaintiff," which the court gave with this qualification: " unless there was also negligence on the part of the stage company, or their agents or employees, and such negligence contributed in causing the injury; in which case the plaintiff could not recover in this action." The plaintiff

excepted to the qualification; but, as appears from the foregoing considerations it was correct.

It also follows that the tenth instruction requested by the plaintiff was rightly refused, viz.: "that if the jury believe that the ferry boat was, at the time of the accident, in charge of and operated by the defendant or the defendant's servant, the ferryman, then the defendant can not exculpate himself from liability in the premises by showing contributory negligence on the part of the stage company under the issues in this case."

The sixth instruction requested by plaintiff was, that "testimony of what the ferryman may have said to the agent of the plaintiff days before the occurrence, cannot be considered by the jury any further than such testimony tends to show knowledge in the agent of the plaintiff of the condition of things at the landing place, to which the boat was transferred;" which the court qualified by adding, "and thereby to affect the question of the care required upon the part of the stage company," and plaintiff excepted.

The testimony, which has been already referred to, merely went to show knowledge on the part of the stage company that this was a dangerous place to cross. This could only be material on the question of contributory negligence, if the coach had approached it so carelessly as thereby to concur in causing the accident; for, as to getting upon the boat, the ferryman, having taken charge of the coach, was bound to see to *that*. But if the knowledge aforesaid of the stage company did not affect the question of contributory negligence, it was altogether immaterial how far it might affect the degree of care required of the company in any other respect. The qualification, therefore, would seem to be an immaterial one. If the jury understood it to refer to the instruction already given by the court of its own motion,

it would, as will hereafter appear, have been likely to mislead them ; but it does not refer to it expressly, and perhaps it would not be fair to suppose or presume that the jury understood any such reference to be meant.

But while, in this view of the matter, it can hardly be said that the qualification is affirmatively shown to be error, it will be easy to prevent any misapprehension upon the part of the jury upon the new trial, which must be awarded for reasons independent of the qualification referred to.

The plaintiff excepted to the first and second instructions, given at defendant's request ; but as it was stated at the argument that no complaint was made of them, they require no remark from us.

The exception to the third instruction given at the defendant's request was well taken. This was as follows :

" If the ferryman removed the ferry boat from the place of its usual crossing to the crossing where the accident occurred, and was running it there when the accident occurred, but in so doing acted without authority from the ferry-owners the plaintiff cannot recover."

Whatever liability, if, any, the ferryman might incur to his employers by running the boat at another than the usual crossing without their authority, a traveler would certainly not be bound by any direction not known by him that the ferry owners might have given the ferryman as to the use of any particular place of crossing. They were authorized to maintain a ferry across the river at Hastings. If a traveler knew that this was not the usual crossing, the ferryman would still be acting within the scope of his general authority in running the boat there, and in this case there was no attempt to prove any express authority at all. The evidence went no further than to show that the ferryman had never been expressly authorized to run the boat elsewhere than at the

usual crossing. The instruction, moreover, is irrespective of any question of notice. If there was no authority, the plaintiff could not recover under this instruction, whether he knew of such want of authority or not

Before charging the jury upon any of the requests of the parties, the court had charged them, " that the keeper of a ferryboat was a common carrier, and under the same obligations as to care and diligence as other common carriers for hire; that in the transportation of passengers he was bound to exercise the greatest care and diligence, and was liable for the slightest neglect; that it was a principle of law, that a party could not recover damages for the negligence of another party, if his own negligence directly contributed to the injury of which he complained; that it was the duty of the stage company to exercise proper care and diligence, and that negligence upon the part of the ferry company would not excuse them from the exercise of such care on their part; that the degree of care to be exercised by the stage company depended in a measure upon their knowledge of the condition of the ferry, and of the danger to be guarded against; that the question of contributory negligence would require the jury to inquire into the condition of the stage, into the knowledge of the stage company or its agents of the situation of the ferry, and of the character of the fastenings, and into the management of its employees in driving upon the boat; that the ferry company were bound to have lanterns, if necessary for safety, but that their failure to provide them would not excuse the stage company, if the want of them on the stage contributed to the injury complained of."

We do not perceive that this was objected to; but, the 4th and 5th instructions were qualified as given by reference to it, and were excepted to as given. The statement that the degree of care to be exercised by the stage company depended in a

Blakeley v. Le Duc.

measure upon their knowledge of the condition of the ferry, and of the dangers to be guarded against, might be abstractly correct; but in connection with what follows, as applied to the testimony, it might mislead.    There being no evidence that we can discover of any want of care on the part of the stage company in approaching the boat or driving on, and the coach, while driving on, being in the ferryman's hands and possession, and he being responsible for the condition of the boat, the stage company would certainly not be responsible in respect thereof, whether it were to their knowledge dangerous getting on, or not.

As between these parties, the danger to be guarded against was, that the fastening would not be strong enough to hold the boat while the coach passed on, but the stage company, as will more fully appear hereafter, had a right to take the risk of *that;* for this was a danger which the ferryman, and not the traveler was bound to guard against.

We are unable to discover how, upon any evidence in this case, the condition of the stage could enter into the question of contributory negligence.

The coach had no lights, and was purposely so constructed as to uncouple by the lifting up of the body, so that, as is testified, " if it tipped over, or any accident should happen, it would uncouple and free the horses and fore wheels from the body of the coach."    This was the usual way of constructing coaches at the time, and, as testified, it was done for greater safety.

The ferryman testified that " the king bolt broke." But the stage agent says that " it did not break; we found it in the rocker; we ran the forward wheels on to the land, and put the coach together, and ran the coach back to town.    It was not injured at all; the king bolt and all the rigging was entire and uninjured "; and the express messenger says that he " helped put the stage coach together; the king bolt was in

its place where it should be, in forward rocker.   *   *   There was nothing broken about the coach."

As we are satisfied that the statement of the ferryman is not of his own personal knowledge, but is merely his opinion based upon his having, as he says, seen " ;hat a man called a piece of the king bolt," we think it must be taken as established not to have been broken. It is therefore, in our view of the evidence in respect to these two particulars only, viz.: the tendency of the coach in a certain event to uncouple, and its having no lights, that it could be suggested that the condition of the coach had any bearing upon the question of contributory negligence. We therefore do not feel called upon to discuss as to what effect or bearing the breaking of the king bolt might have had.

Neither of the two circumstances above stated had any bearing on the said question. It is true that if the coach had not uncoupled, McLean might not have been drowned; but this did not result from any defect in the coach. It was perfect of its kind; and though, as to McLean, the stage company assumed the risk of any insecurity in the fastenings of the boat, they did not assume it as between themselves and the ferry company. They had a right to hire the ferry-owners to transport such a coach, upon the assumption that the boat was so safely and securely fastened to the shore that it would not float off while the coach was passing upon it.

So as to the want of lanterns upon the stage, this cannot be said, as between these parties, to have contributed to the injury. As to McLean, indeed, it might, as held in *McLean vs. Burbank*, have been negligence on the part of the stage company not to have had them upon the stage; but with *that* question the case has nothing to do.

It is *possible*, for instance, if there had been lanterns on the stage, that the driver might have thereby discovered that the

Blakeley v. Le Duc.

rock to which the rope was fastened was slippery with ice and likely to let the rope off; but, *as against the ferry-owners,* the want of lanterns is no want of ordinary diligence on the part of the stage company. The ferry-owners were, in respect of the stage company, bound to have safe and secure fastenings, and the stage company had the right to assume that such had been provided. So again, though lights on the stage might perhaps have enabled McLean seasonably to have escaped from the stage, and the stage company would therefore be liable to him for their absence, yet the neglect, for which the ferry-owners were as absolutely responsible to the stage company as to any other traveler, was their neglect to provide safe and secure fastenings; such neglect was the direct cause of the injury, and as the stage company had, as already stated, the right to assume that such would be provided, it can not be said, as between the stage company and the ferry company, that such want of lanterns in any way contributed to the injury.

Again, if necessary to the safety of the travelers, the ferryman was bound to provide lanterns on the ferry. How then can he claim that the traveler is guilty of a want of ordinary care in not providing them upon his vehicle?

Perhaps it is not necessary to add anything to what has been already said to show that, upon the question of contributory negligence, the jury had no occasion to inquire into the knowledge of the stage company, or their agents, of the situation of the ferry, or into the management of its employees in driving upon the boat. Upon the evidence in this case it is by no means free from doubt as to whether the question of contributory negligence required the jury to examine into the stage company's knowledge of the character of the fastening; but upon the whole we think that perhaps no just exception could be taken to the instruc-

tions in that particular. The rope had previously been fastened to a ledge; the rising of the water rendered this impracticable; the ferryman thereupon procured and put the rock in place; this was the first time the stage had attempted to cross since the rock had been in use. The ferryman swears that "the ground was frozen; the only way it could be fastened was to fasten it to a rock as I did. I told White I did not consider it a safe fastening, and did not like to ferry them." *When* he so told him does not appear. But if he so told him on this occasion, as to which his evidence is not consistent with that of White and the express messenger, and the idea thereby conveyed would have been, that the boat was *then* insecurely fastened to the bank, of which the jury, time, place and circumstances considered, would be the judges, there would, we think, have been testimony in the case, upon which the court might have properly left it to the jury to say, under all the circumstances, whether or not the agent, in the exercise of ordinary care, should have refused to entrust the coach to the ferryman for transportation until he had examined the fastening and tested its sufficiency. *Clayards vs. Dethick*, 12 *Ad. & El., N. S.* (*Q. B.*) 439.

Ordinary care would imply the use of such precautions as are fairly proportioned to the danger to be avoided, judged by the standard of common prudence and experience. It might be a want of it to so entrust a coach, horses and passengers, where it would not be so to entrust a load of wheat. *Shearman & Redfield on Negligence*, § 30, *and cases cited.*

The 4th instruction above referred to was, that, "if the accident complained of was occasioned through the fault of both the agents of the ferry-owners and the agent of the stage company, then the plaintiff cannot recover." This was in itself unexceptionable; but the court gave it with this qualifi-

cation : "You will bear in mind, gentlemen, what has been said to you in reference to the degree of care required of the respective parties, and upon the subject of contributory negligence "—which would evidently mislead the jury into a belief that they were to take into consideration certain matters altogether outside the question of contributory negligence as above explained.

The 5th instruction requested was, that " if the shore fastening of the ferry at the place of the accident was not safe, and the agent of the stage company knew its character, or if it was dangerous approaching and getting on to the ferry, and so known to the driver, or agent of the stage company then present, it was the duty of the driver or stage agent to have so informed the passengers in order that they might get out ; and if such notice was not given, it was negligence on the part of the stage company "; which the court read to the jury, and added : " upon this point, gentlemen, I shall leave it to the jury to say, under all the circumstances of the case as they appear in evidence, whether the care and diligence required of the stage company, as already explained to you, required them to give such notice to the passengers. If it did, and they failed to give such notice, and such failure contributed to the injury, the plaintiff cannot recover."

It is evident that this instruction and qualification were erroneous and would mislead the jury.

Knowledge of the character of the fastening might have a bearing upon the question as to whether the agent was negligent in entrusting the coach with its lading to the ferryman. But after the coach, etc., were delivered to the ferryman, the stage company had no duty to perform towards the ferryman in the way of notifying the passengers. The duty of the stage company to the passengers might require it to give such notice, but that is not a duty of which defendant can claim

the benefit, and as between him and the stage company, their failure to perform it could in no sense contribute to the injury.

Nothing need to be added to what has been already said to point out the error in this instruction, in respect of the approaching and getting on the ferry.

The 6th instruction and qualification require no remark beyond what has been already said, to show that they were erroneous

The instruction was as follows:

"If it was dark at the time of the accident, and dangerous getting on to the ferry boat, it was negligence on the part of the stage company if there were no lights on the stage," which was qualified by the statement that the court left it to the jury to say, "whether the care and diligence required of the stage company required them to have lights upon the stage. If it did, and want of such lights contributed to the injury complained of, the plaintiff cannot recover."

That White, the agent of the stage company, stated after the accident that he "was to blame for the removal of the boat," was certainly incompetent. It had no tendency, that we can discover, to prove the defendant's allegation in his answer, that the boat was in charge of the stage company at the time of the accident, and that the removal of the boat did not contribute to the injury. Whoever moved it, if it was in charge of the ferryman, the stage company had a right to assume that it would be securely fastened.

The testimony, already adverted to as admitted under plaintiff's objection he now admits, as we understand his argument, might have been competent on the issue, as to whether or not the stage company had taken charge of the boat.

Judgment appealed from reversed and new trial ordered.