JEANETTE WASHBURN, by her Guardian, *vs.* GYSBERT VAN STEENWYK and others, Executors.

. July 21, 1884.

Estates of Decedents—Lex Rei Sitæ—Foreign Will.—The laws of a state in which real property may be situated control as to the descent, or transfer of title by devise, by a foreign will or otherwise, of such real property.

Same—Statutory Estate of Surviving Husband or Wife—Consent to Devise.—By statute, (1875 and 1876,) the estate of dower in lands in this state was abolished, and in lieu thereof an undivided one-third of the lands of the husband descended in fee to the widow, "free from any testamentary or other disposition thereof to which such survivor shall not have assented in writing." No devise by the husband, not so assented to by the wife, could of itself interrupt this law of descent.

Same—Election—Estoppel—Bequest in Lieu of Statutory Provision.— The estate so created is, however, subject to the application and ordinary effect of the equitable doctrine of election or of estoppel. When a testator by will bequeaths to his wife something to which she has no right, except by force of the will, and by the same instrument disposes of all his lands in which she is by law entitled to dower, or to an estate of inheritance, it being apparent that the testator intended the bequest to be in lieu of her legal estate, and the devise being valid except for the legal rights of the wife in the property, a case for an election arises on the part of the widow, as to whether she will take under the will or against it. If she elects to take the bequest, she will be held to have confirmed the devise, and to have relinquished her legal estate.

Same—Insane Widow—Construction of Will by Supreme Court of Another State—Effect in this State.— A testator owning real property in Wisconsin and in Minnesota died in the former state, that being his domicile as well as that of his widow. The widow was insane.

Administration was had upon the will in Wisconsin, and also in this state, in respect to property here. An action was commenced in Wisconsin, in which all persons interested in the will were made parties, for the purpose of obtaining a judicial construction of the will, and, if it should be considered to present a case for election on the part of the widow as between certain bequests made by the will in her behalf and her legal rights in the property of the testator, that an election might be made in her behalf. In that action it was finally determined that the will expressed the intention of the testator that the bequest in favor of the widow should be in lieu of her legal right in the testator's property, and not in addition thereto; that it presented a case for an election; and the court, acting in behalf of its insane ward, elected in her behalf to take under the will. *Held*, that such determination as to the construction of the will was conclusive between the parties.

**Same—Election for Widow by Probate Court in this State — Effect of Appeal—Election made, pending such Appeal, by Court in State of Testator's and Widow's Domicile, having Jurisdiction of all Parties.**—In the course of administration with respect to the lands in this state, our probate court made an election in behalf of the insane widow to take against the will. The adjudication involving this election was prior to the final election made in Wisconsin. But an appeal upon questions of law and of fact was taken from the judgment of the probate court to the district court, which appeal had the effect, under the statute, to transfer the cause to the district court for trial *de novo.* Pending this appeal, and before the new trial, final judgment was rendered and election made in Wisconsin as before stated. *Held,*—

(1) The Wisconsin court had jurisdiction to make such election, no previous election having been made.

(2) The probate court of this state had also authority to make the election, no other election having been made, as necessarily incident to its jurisdiction in the administration of the estate here.

(3) Upon the appeal being taken from the judgment of the probate court, the cause became *lis pendens* in the district court for trial *de novo,* and for the determination by that court of all the issues involved, including that of election. The election made by the probate court did not, upon such new trial, conclude the parties, nor control the judgment of the district court.

(4) The election finally made and declared by the Wisconsin court was effectual everywhere as the election of the widow to take under the will, and precluded a different choice being made in respect to lands in this state.

v.32—22

Cadwallader C. Washburn, of La Crosse, Wisconsin, died May 14, 1882, having made his last will on December 13, 1881, in which he named the respondents Gysbert Van Steenwyk, Charles Payson and Charles J. Martin as his executors. The will was proved in Wisconsin July 5, 1882, and was admitted to probate in Hennepin county, in this state, on August 28, 1882, and the executors named in the will were duly appointed and qualified as executors, and received letters testamentary, in each of these states.

The testator never resided in Minnesota. He left a widow, the appellant Jeanette Washburn, and two children. The widow is and for more than 20 years has been insane, without any lucid interval. Her domicile has always been in Wisconsin, and she has never been within the state of Minnesota. In August, 1882, George K. Chase was by the proper court in Wisconsin, and by the probate court of Hennepin county, appointed her guardian, and duly qualified as such.

The testator's estate was of the clear value of $1,500,000, and comprised real property in Minnesota of the value of $787,300, consisting chiefly of large flouring-mills, operated by water-power, in the city of Minneapolis, Hennepin county, and rights appertaining thereto. His personal property was ample for payment of all his debts. His real estate in Minnesota was all acquired after his marriage with the appellant, and prior to the year 1875. All his estate is disposed of by the will. After directing payment of debts, the testator, in the second clause of his will, made the following provision for his widow: "*Second.* I direct my executors to bear constantly in mind the wants of my wife, and to set aside, use and expend whatever moneys may be necessary, consistently with her condition, to provide for her comfort and physical health; and I place no limit upon the sums which they may spend for the purposes indicated." The testator then created certain trusts, founded certain charities, (among them, "The Washburn Memorial Orphan Asylum," at Minneapolis, which he endowed with $375,000, and the "La Crosse Public Library," with an endowment of $50,000,) made many bequests to his children and relatives, gave his executors power to manage and carry on his business until his estate should be settled, (which he contemplated would be at the end of five years,) and finally disposed of the residue of

his estate, one half to his two daughters and one half to his brothers.

By the laws of Wisconsin, a widow has dower, substantially as at common law, in her husband's lands, (R. S. § 2159,) but by the following sections she is required to elect between the provision made for her by her husband's will, and that made for her by the law:

"Sec. 2171. If any lands be devised to a woman, or other provision be made for her in the will of her husband, she shall make her election whether she will take the lands so devised or the provision so made, or whether she will claim the share of his estate provided in the next section; but she shall not be entitled to both unless it plainly appears by the will to have been so intended by the testator.

"Sec. 2172. When a widow shall be entitled to an election under either of the last two preceding sections, she shall be deemed to have elected to take such jointure, devise, or other provision, unless within one year after the death of her husband she files in the court having jurisdiction of the settlement of his estate notice in writing that she elects to take the provision made for her by law, instead of such jointure, devise, or other provision; and, upon filing such notice, she shall be entitled to the same dower in his lands, and the same rights to the homestead, and the same share of his personal estate, as if he had died intestate.    *    *    *"

Until 1875 the statute of this state in respect to dower, and election by the widow was similar to that of Wisconsin. Gen. St. 1866, c. 48, §§ 1, 18, 19. Dower was abolished, and chapter 48 expressly repealed, by laws 1875, c. 40, §§ 1, 5. In 1876, a statute of descents was passed, providing as follows, (Laws 1876, c. 37, § 3; Gen. St. 1878, c. 46, § 3:)

"Such surviving husband or wife shall also be entitled to and shall hold in fee-simple, or by such inferior tenure as the deceased was at any time during coverture seized or possessed thereof, one equal, undivided one-third of all other lands of which the deceased was at any time during coverture seized or possessed, free from any testamentary or other disposition thereof to which such survivor shall not have assented in writing.    *    *    *"

There is no statutory provision concerning election by the surviving husband or wife.

On November 23, 1882, the guardian of the widow filed in the proper probate court of Wisconsin a notice in writing that she elected to take the provision made for her by law instead of that made for her by the will. Thereupon the executors, on December 5, 1882, brought suit in the circuit court for La Crosse county, Wisconsin, against the widow, her guardian, the daughters of the testator, and all the trustees and beneficiaries named in the will, praying for a construction of the will, and among other things that the court define the rights of the insane widow, and determine whether the widow, "being insane, shall take under the provisions of the will, or against the will?" and whether she "is entitled to one-third of the land of which her husband was seized during coverture in the state of Minnesota, without an election?" and "if the widow must elect, she being insane, by whom or how shall the election be made? If by the court, what shall the election be?"

The circuit court in which the suit was brought is a court of general jurisdiction, and had jurisdiction of the subject-matter of the suit. All the defendants appeared, and the widow, by her guardian, answered the complaint, and such proceedings were thereafter had that on May 14, 1883, it was adjudged that the direction to the executors in the second clause of the will was not such a provision for the widow as to put her to her election, and that she was entitled to take whatever benefits accrue to her under that direction and also her legal share in the testator's property, and there was adjudged to her dower in the real estate in Wisconsin and one-third of the personalty.

From this judgment the executors appealed to the supreme court of Wisconsin, where the cause was heard and such proceedings had that on November 20, 1883, the judgment of the circuit court was reversed, and the cause remanded to the circuit court, with directions to enter a judgment in accordance with the opinion of the supreme court. In that opinion the court held (1) that the provision in the second clause of the will was intended to be in lieu of the widow's dower and her one-third of the personal estate; (2) that the statute requiring election applies to an insane widow; (3) that the election should be made by the court, and not by the guardian; and the court thereupon elected for her the provision in the will "as being on the

whole the best and most advantageous for her interest and welfare."
The case is reported as *Van Steenwyck* v. *Washburn,* 59 Wis. 483.

After the executors had brought their suit (on December 5, 1882,) in
the Wisconsin circuit court, and on December 15, 1882, the guardian,
on behalf of the widow, presented to the probate court of Hennepin
county a petition, setting forth that the testator's debts had all been
paid; that his estate, after payment of debts, is of the net value of
about $1,700,000, and that the real estate in Hennepin county (fully
described) is of the value of about $900,000, and praying that an
undivided one-third of such real estate be assigned to him by metes
and bounds, or through a sale thereof or otherwise, as the court should
decree; and that the executors be required to deliver to him posses-
sion of the real estate so assigned, and account for and pay over to
him one-third of the rents, issues and profits of the real estate while
in their possession. The petition also shows that on December 11,
1882, the guardian had filed in the same court an instrument, signed
by him in the name of the widow and by himself as her guardian,
renouncing all benefits of the will, and that the guardian had elected
for her, both in this state and in Wisconsin, to take her legal share
and renounce all testamentary provisions, and prays that if the court
should adjudge that the petitioner is put to an election, the court will
adjudge that she has elected to take against the will, or will make,
or authorize her guardian to make, such election for her.

The executors obtained from this court a writ of prohibition, re-
straining the probate court from acting on this petition, which writ
was afterwards (and in March, 1883,) quashed. See *State* v. *Ueland,*
30 Minn. 277. They then answered the petition, pleading, among
other things, the suit then pending and undetermined in the circuit
court of Wisconsin, and praying that the hearing on the petition be
postponed until that action should be determined. A hearing was
however had in the probate court, on April 18, 1883, and on May 11,
1883, a decision was made thereon, declaring the widow required to
elect, and that the court should make the election for her; electing
that she take one-third of the real estate in Hennepin county, and
assigning to her an undivided one-third of all such real estate. A
decree in accordance with this decision was entered June 2, 1883.

From this decree the executors appealed to the district court for Hennepin county, where they filed, (on November 30, 1883,) a supplemental answer, pleading as a bar the further proceedings in the action in Wisconsin, including the decision and judgment of the supreme court of that state. The appeal was heard in the district court by *Young, Lochren* and *Koon*, JJ., who held (1) that the construction of the will by the supreme court of Wisconsin, the state of the testator's domicile, should be followed in this state, and therefore that the second clause of the will made an ample provision for the widow, and was intended to be in lieu of all her legal rights in the testator's property; and that his disposition of his real estate in Minnesota was inconsistent with any intention that the widow should take any part thereof or any interest therein, under the laws of this state or otherwise; (2) that the will presents a case where, under the law of this state, the widow must elect between her legal rights in the testator's property in this state and the provision made for her in the will; (3) that the widow being insane, the power and duty of making the election devolved on the court having jurisdiction to act in the matter, and that the attempted election by the guardian was beyond his power, and void; (4) that as the testator and the widow were both domiciled in Wisconsin, it would properly devolve on the courts of Wisconsin, having charge of the widow's person and the principal administration of the testator's estate, to act for the widow in this matter in which, except for her disability, she would be required to act personally; and that, especially since the proceedings were first begun in Wisconsin, the courts of this state, on being properly apprised thereof, should await the action and judgment of the Wisconsin court, and conform their own action and judgment thereto. But while holding that the courts of this state are bound by the election made in Wisconsin, the court expressed its strong dissent from the theory on which the supreme court of Wisconsin acted in making the election, and held that the court in such cases should act as it must fairly be presumed that the widow would have acted if sane—as persons so situated ordinarily act; and that the only pertinent question is:—Which is most for the benefit of the person for whom the election is to be made? or, briefly: Which is the more valuable?

Judgment was accordingly entered, on March 20, 1884, reversing the decree of the probate court, and dismissing the petition, from which judgment the petitioner appealed to this court.

*C. K. Davis, W. J. Hahn,* and *Cameron, Losey & Bunn,* for appellant.

. By the statute of descents, (Gen. St. 1878, *c.* 46, § 3,) an undivided one-third of all the testator's lands vested in fee-simple in his widow immediately upon his death, subject to his debts (in default of personal assets) and without need of any assignment to perfect her title, which in these respects is like that of an heir and not that of a dowress. It is this vested estate which is sought to be devested by the judgment in this case.

1. The court erred in applying the law of the domicile. The *lex situs* controls as to the descent of lands, the validity of wills of land, wherever made, the capacity or incapacity of the testator, wherever domiciled, and the extent of his power to dispose of the lands; (*U. S. v. Fox,* 94 U. S. 315, 320; *Jones* v. *Habersham,* 107 U. S. 174; Westlake, Priv. Internat. Law, §§ 80, 88; Story, Conflict of Laws, §§ 431, 435-443, 445-6, 474-9; 1 Burge on Col. and For. Law, 217-8) and also as to the lands of persons under guardianship, wherever domiciled, and no rule of comity can be allowed to give an extraterritorial effect to the proceedings in the courts of Wisconsin. *Hoyt* v. *Sprague,* 103 U. S. 613, 630; Story, Confl. of Laws, §§ 18-23, 499, 504; Wharton, Confl. of Laws, §§ 259-268; 3 Burge on Col. and For. Law, 1011.

2. Under the law of Minnesota, according to which these lands must descend, notwithstanding a foreign will invalid to pass them, no election need be made with regard to these lands. There is no statute requiring it, and this is no case for election under the general principles of equity, because there is no defect of title in the testator. He had perfect title, but the disposition is invalid because expressly prohibited by the statute, which imposes both a personal incapacity on the testator and an undevisable quality on the land. 1 Pomeroy, Eq. Jur. §§ 482-3; 1 Lead Cas in Eq. (4th Am. Ed.) 522; 1 Jarman on Wills, (Bigelow's Ed.) 447; *Sheddon* v. *Goodrich,* 8 Ves. 481; *Gardiner* v. *Fell,* 1 Jac. & W. 22; *Wilson* v. *Wilson,* 1 De G. & Sm. 152;

*Kearney* v. *Macomb*, 16 N. J. Eq. 189; *Tongue* v. *Nutwell*, 17 Md. 212; *Jones* v. *Jones*, 8 Gill, 197; *Melchor* v. *Burger*, 1 Dev. & Bat. Eq. 634; *Blaiklock* v. *Grindle*, L. R. 7 Eq. 215; *Hearle* v. *Greenbank*, 1 Ves. Sr. 298, 306; Westlake, Priv. Internat. Law, § 80; *Wollaston* v. *King*, L. R. 8 Eq. 165.

In all the cases where the heir of foreign estates has been put to an election in the forum of the domicile and probate in respect to such estates, they were devisable under the will, and there was no want of capacity in the testator. Westlake, § 80. The Wisconsin court should have allowed full operation to the foreign law of descent, and, if they considered the case proper for an election as to them, they might have deprived the widow of any benefit under the will. *McCall* v. *McCall*, 1 Drury, 283; *Van Dyke's Appeal*, 60 Pa. St. 481; *Jones* v. *Jones*, 8 Gill, 197; *Kearney* v. *Macomb*, 16. N. J. Eq. 189.

The widow, claiming only as heir-at-law under the statute, cannot be put to an election where there is no valid will by which her title can be affected. *Kearney* v. *Macomb*, 16 N. J. Eq. 189, 195.

3. Under the statute the widow's estate cannot be devested without her consent in writing. An election to take under the will is a purchase of the testamentary provision which the testator offers to sell her, at the price of her surrender of her legal estate. But an insane widow can give neither a voluntary nor a written consent. The power to consent is personal, and the form prescribed by statute is essential, and her consent cannot be given by guardian, or by a court, or in any other than the statutory mode. This is held where an express dissent is required to defeat a statutory presumption of assent. *Van Steenwyck* v. *Washburn*, 59 Wis. 483; *Pinkerton* v. *Sargent*, 102 Mass. 568; *Lewis* v. *Lewis*, 7 Ired. Law, 72. The statute makes no exception, and the court should not engraft upon it an exception, to the prejudice of an insane widow. Hence an election by a court in Wisconsin could not, under the statute, devest the widow's estate.

4. The Wisconsin election was under a statute of that state, and was not between the provisions of the will and the widow's estate in Minnesota, but merely between that provision and the provision made for her by the law of Wisconsin. It was made under Rev. St. § 2171, which provides for an election between the provision made by the

testator and "*the share of his estate provided in the next section,*"— not her legal rights in other states or even her share in his estate provided by other sections of the Wisconsin statutes, such as her support during the settlement of the estate, under § 3935.  *Application of Wilber*, 52 Wis. 295.  And under an earlier statute for election between the provision and dower only, an election of the provision was no bar to her claims on the personalty.  *Hardy* v. *Scales*, 54 Wis. 452.  And see *Kempton's Case*, 23 Pick. 163; *East* v. *Cook*, 2 Ves. Sr. 30; *Hatgood* v. *Houghton*, 22 Rich. (So. Car.) 480; *Ward* v. *Ward*, 15 Pick. 511, 526.

Election under the Wisconsin statute is a choice between the provision and the Wisconsin dower and third of the personalty, which are all that is given the widow by "the next section," (2172.)  A choice between two things cannot affect a third and distinct thing of much greater value than either, not offered to nor in the mind of the choosing party when making the election.  The Wisconsin statute assumes to operate and can operate only on Wisconsin lands, and not on lands beyond the jurisdiction of that state.  *Van Arsdale* v. *Van Arsdale*, 26 N. J. Law, 404.

The Wisconsin supreme court in its opinion shows that it assumed no jurisdiction to make and did not make any election involving the Minnesota lands, or any election except under the Wisconsin statute, or any election except between the provision of the will and the provision made by that statute; and the election is no broader in its operation than the terms of the statute.  *Van Steenwyck* v. *Washburn*, 59 Wis. 483, 496–7, 500–1, 504–5, 510, 512.

Instances where an election to take a gift made to a widow in satisfaction of dower, or of all claims, has been held not to preclude her from taking her legal share of property not lawfully devised or which has been the subject of a bequest that has failed, are: *Manice* v. *Manice*, 1 Lans. 348; *Lefevre* v. *Lefevre*, 59 N. Y. 434; *Hatch* v. *Bassett*, 52 N. Y. 359; *Milizet's Appeal*, 17 Pa. St. 449; *Pickering* v. *Lord Stamford*, 2 Ves. Jr. 272, 581; 3 Ves. Jr. 332, 492; *Norcott* v. *Gordon*, 14 Sim. 258; 1 Jarman on Wills (Bigelow's Ed.) 467–8.

By the Wisconsin election, made under the Wisconsin statute, the widow bought the provision made for her by the will at the price of

her surrender of the provision (dower and one-third the personalty) made for her by that statute. The provision she thus bought and paid for, she now owns absolutely, not as a bounty, but as a purchaser for value. *Isenthart* v. *Brown,* 1 Edw. Ch. 411; *Collins* v. *Carman,* 5 Md. 503; *Howard* v. *Francis,* 30 N. J. Eq. 444; *Lord* v. *Lord,* 23 Conn. 327; *Lawrence's Appeal,* 49 Conn. 411, 425; *Chamberlain* v. *Chamberlain,* 43 N. Y. 424; *Sanford* v. *Sanford,* 4 Hun, 753. And the price she has paid is the full price required by the law of the domicile for what she has received. She cannot be compelled to pay for it again with her interest in the Minnesota lands. An election between the provision of the will and her legal estate in the Minnesota lands would be an election, not between her legal right and an offered bounty, but between two things each of which she absolutely owns—her estate in the lands which is vested by the law, and the provision of the will which she has bought and fully paid for by the election made in Wisconsin.

If this case is to be governed by the law of Minnesota, then the widow should either take the lands without any election, or, if an election must be made, the court should elect for her to take the lands as the most valuable. Certainly, the courts here would not be hampered or controlled by the decision in Wisconsin. An election involves freedom of choice. But if there can be but one election, or if the law of the domicile is to govern, and the decision in Wisconsin to control, the election in Wisconsin has exhausted the subject, and the widow cannot be put to a second election. She cannot be required to buy again what she has already by that election bought and paid for, nor can further compensation be exacted from her than that required by the law of the domicile, and which she has fully paid.

5. The widow's Minnesota lands cannot be devested, bartered, sold or exchanged, except in the mode pointed out by the Minnesota statute—that is, upon petition by her guardian, and when the sale or exchange appears to be for the interest of the ward. Nor can a foreign guardian, or court acting as such, make for her such a disposition or contract of disposition. Gen. St. 1878, c. 57, §§ 23, 25, *et seq.; State* v. *Ueland,* 30 Minn. 277; *Van Dyke's Appeal,* 60 Pa. St. 481.

6. That the probate court of Hennepin county had jurisdiction to make the election has been expressly decided by this court. *State* v. *Ueland*, 30 Minn. 277. Its judgment was first pronounced. It was properly brought to the attention of the Wisconsin supreme court, and that court should have given it faith and credit, and have deprived the widow of her support merely. There is no rule of comity or of law which compels this court to reverse a correct decision first made by a court of this state having full jurisdiction, out of respect to a wrong decision of a foreign court subsequently made, which itself disregarded the same rule of comity now pressed here in support of the foreign judgment.

It is for the courts of this state and not for those of Wisconsin to declare authoritatively what are the legal rights of the widow to lands in this state, and whether, by the laws of this state, she is put to an election in respect to lands within this state.

*J. M. Shaw, J. B. Gilfillan* and *Wm. P. Lynde*, for respondents.

DICKINSON, J. In determining the rights of the widow of the testator in lands in Minnesota, which he by will devised to others, we shall have occasion to consider the statute controlling the descent of real property in this state; whether this statutory law of descent is subject to be affected by the equitable doctrine of election, as between an estate conferred by the law and provision made by will in lieu of such estate; whether this case is one to which this doctrine is applicable; and whether an effectual election has been exercised on the part of the widow, of a nature to bar her statutory right.

Although the testator, at the time of his death, had his domicile in the state of Wisconsin, where the will was executed, and where the widow still is domiciled, we refer to the law of our own state for the rule of descent of lands situated here. It is an established principle of the law that real estate is exclusively subject to the laws of the government within whose territory it is situated. This governmental power of the state is a necessary incident of the sovereignty which every nation exercises within its own borders. Story, Conflict of Laws, § 428; *U. S.* v. *Fox*, 94 U. S. 315.

Prior to 1875 the law of dower prevailed in this state substantially as at common law. In that year, by an act entitled "An act to abol-

ish estates in dower and by the curtesy, and provide for estates of inheritance or otherwise, in lieu thereof," (Laws 1875, c. 40,) estates in dower, not then consummate, were abolished. By that law it was enacted, after making certain provisions respecting the homestead, that "such surviving husband or widow shall also be entitled to and shall hold in fee-simple, or by such inferior tenure as the deceased was seized or possessed thereof, one undivided one-third of all other lands of which the deceased died seized or possessed, free from any testamentary disposition thereof to which such survivor shall not have assented in writing. * * *" This was somewhat modified in 1876 by an act prescribing a general rule of descent of real property, (Laws 1876, c. 37, § 3; Gen. St. 1878, c. 46, § 3,) in which it was enacted that "such surviving husband or wife shall also be entitled to and shall hold in fee-simple, or by such inferior tenure as the deceased was at any time during coverture seized or possessed thereof, one equal undivided one-third of all other lands" (provision having been previously made respecting certain rights in the homestead) "of which the deceased was at any time during coverture seized or possessed, free from any testamentary or other disposition thereof to which such survivor shall not have assented in writing." There is no statutory limitation, other than that arising by force of these statutes, upon the power of the testator to devise all of his lands, which has any application to this case. On the contrary, the general right to devise is expressly declared by statute. Gen. St. 1878, c. 47, § 1. It is clear, from the provisions of the act of 1875, and is also expressed in its title, that the larger estate thereby created was intended as a substitute for the estates of dower and curtesy; the purpose plainly being to provide, in favor of the surviving spouse, an inheritable estate in fee, in place of the life estate which was then abolished. The act of 1876, which was a general statute of descent, was made to include this already established rule of property, with some changes in effect amending its provisions. Under this statute no testamentary devise of lands within this state, not assented to in writing by the wife or widow of the testator, could, *of its own force*, interrupt the descent of an undivided one-third of the estate to her, in case she survived her husband, or deprive her of the legal right to receive and enjoy

such statutory estate. Nor had the devise of these lands, made by this will, the effect to devest the widow of such legal estate.

It does not follow, however, that the widow may not have been barred of her estate in the lands, or estopped from asserting it, upon principles of equity jurisprudence, by her own act of election under the will, or by that made for her by a court having jurisdiction to make an election in her behalf. To construe the statute as excluding the application and operation of such general principles of the unwritten law as have long been recognized and applied under similar circumstances, would give to it an effect not indicated by its terms, and such as is not warranted by principles of statutory construction. Statutes are enacted with regard to the already established state of the law, with regard to the existing principles of the common law and of equitable jurisprudence, and should be so construed as to harmonize with the existing body of law, unless the intention to change or repeal it is apparent. *Blackman* v. *Wheaton,* 13 Minn. 299, (326;) 1 Pom. Eq. Jur. § 279. There is nothing in the act above referred to expressing an intention that the estate thereby created should be withdrawn from the jurisdiction of equity, nor that it should be exempt from the operation of the ordinary principles of justice as administered in courts of equity. This statutory right is not more absolutely bestowed upon the wife as an inchoate estate, to become consummate and vested upon the death of the husband, than was the former estate of dower, for which it is substituted. Yet that the right of dower may become barred upon equitable principles, is not doubtful. This statutory right is not more perfect than is a vested estate in fee at common law. Yet it is certain that such a title may devolve upon another, through the principle of estoppel, notwithstanding statutes which declare that conveyances shall be only by deed. The same policy which led to the creation of the estate of dower, and, that it might be effectually secured to the widow, restrained the power of the husband to transfer his title, so as to devest her of it, rendered it expedient that in this statute, creating the substituted estate of inheritance, a similar restraint should be imposed upon the power of alienation, such as is expressed in the words "free from any testamentary or other disposition to which such survivor shall not have

assented in writing." But the implied restraint is directed to the acts of the testator, and not to those of the widow or heir; and neither in the character of the estate conferred, nor in the terms of the act, do we find anything to support the claim that the right to enjoy that estate may not be barred or forfeited by the act of the party in whose favor it is created, or that the equitable doctrine of election is not applicable here, as it was applied in respect to estates of dower, and as it has also been applied in respect to estates of inheritance.

We proceed, then, to consider such of the principles of that doctrine as affect its application to this case. The principle of election, considered with reference to cases like that before us, is, in general terms, defined to be "the obligation imposed upon a party to choose between two inconsistent or alternative rights or claims, in cases where there is a clear intention of the person from whom he derives one that he should not enjoy both." 2 Story, Eq. Jur. § 1075. As stated by Mr. Bispham, (Princip. Eq. § 295,) it is "a choice which a party is compelled to make between the acceptance of a benefit under an instrument and the retention of some property, already his own, which is attempted to be disposed of in favor of a third party by virtue of the same instrument."

In *Thellusson* v. *Woodford*, 13 Ves. 209, Lord Chancellor Erskine thus states the doctrine: (220,) "A person shall not claim an interest under an instrument without giving full effect to that instrument, as far as he can. If, therefore, a testator, intending to dispose of his property, and making all his arrangements under the impression that he has the power to dispose of all that is the subject of his will, mixes in his disposition property that belongs to another person, or property as to which another person has a right to defeat his disposition, giving to that person an interest by his will, that person shall not be permitted to defeat the disposition where it is in his power, and yet take under the will. The reason is, the implied condition that he shall not take both; and the consequence follows that there must be an election. * * * (224,) The principle of election is plain and intelligible—that if a person, being about to dispose of his own property, includes in his disposition, either from mistake or not, property of another, an implication arises that the benefit under the will shall

be taken upon the terms of giving effect to the whole disposition."

The ground upon which the doctrine rests is to be found in the intention of the author of the instrument of donation,—"an intention which, extending to the whole disposition, is frustrated by the failure of any part. * * * The intention being assumed, the conscience of the donee is affected by the condition, (although it is destitute of legal validity,) not express, but implied, which is annexed to the benefit proposed to him. For the donee to accept the benefit, while he declines the burden, is to defraud the design of the donor." 2 Story, Eq. Jur. § 1077. See note to *Dillon* v. *Parker*, 1 Swanst. 359.

The case usually stated to illustrate the rule is that of a testator conveying to A by will certain property, real or personal, and in the same instrument giving to a third party certain property belonging to A—it may be real or personal. In this case A must elect whether he will retain his own property, or take that given him by the will. In the latter event he will be held to confirm the gift of his own property to the third party.

No principle is more thoroughly incorporated in the jurisprudence of England and America than is this doctrine of election, and none is more uniformly applied in cases deemed to come within the scope of it. *Noys* v. *Mordaunt*, 2 Vern. 581; *Streatfield* v. *Streatfield*, Cas. t. Talb. 176; *Whistler* v. *Webster*, 2 Ves. Jr. 367; *Thellusson* v. *Woodford*, 13 Ves. 209, (affirmed in house of lords, 1 Dow. 249;) *Birmingham* v. *Kirwan*, 2 Schoales & L. (Ir. Ch.) 444; *Cooper* v. *Cooper*, L. R. 6 Ch. App. 15; *Herbert* v. *Wren*, 7 Cranch, 370; *Tobias* v. *Ketchum*, 32 N. Y. 319; *McElfresh* v. *Schley*, 2 Gill, 181; *Brown* v. *Pitney*, 39 Ill. 468; *Wilbanks* v. *Wilbanks*, 18 Ill. 17; *Pemberton* v. *Pemberton*, 29 Mo. 408; *Morrison* v. *Bowman*, 29 Cal. 337; *Norris* v. *Clark*, 10 N. J. Eq. 51; *Cauffman* v. *Cauffman*, 17 Serg. & R. 16; *Hyde* v. *Baldwin*, 17 Pick. 303; *Watson* v. *Watson*, 128 Mass. 152; *Holt* v. *Rice*, 54 N. H. 398, 402; *Van Steenwyck* v. *Washburn*, 59 Wis. 483.

The occasion for the enforcement of the rule most frequently arises in the administration of estates under wills, and particularly in cases involving a claim of dower, where the obligation is upon the widow to elect as between her dower in lands devised by her husband and some provision made in her behalf by the will, in case it clearly ap-

pears that she cannot take both the testamentary provision and her dower without violating the intention of the testator. See cases above cited. It has not, however, been confined to wills, but applies as well to deeds and other instruments.

We think that the authorities with substantial unanimity go to sustain the proposition that a case for an election arises when there is, *first*, an intention of a donor or grantor, clearly and unequivocally expressed in the instrument of donation or grant, to dispose of that which belongs to another, and over which he has no disposing power as against such owner; *second*, a donation by the same instrument to that person of something to which he otherwise has no right; unless, perhaps, in case the attempted disposition of the property of the donee is inoperative and void for some other reason than the defect of title in the donor. Whenever these conditions are recognized as existing, the duty of election seems to have been almost uniformly asserted.

But it is upon what is claimed to be a qualification or limitation of the rule, rather than upon a denial of the existence of this general doctrine, that the appellant chiefly relies. It is claimed that this is not a case for an election, because the testator was incapacitated from devising the estate, as to the wife's one-third, and because the devise was hence void. This position cannot be sustained without either enlarging the modification of the general doctrine beyond what has hitherto been recognized as its limit, or giving undue effect to the restraint upon the husband's power of alienation which is implied from the nature of the estate provided by the statute for the widow. We have already suggested a possible limitation of the general doctrine. It was long ago decided in England that where the instrument by which the donor assumed to dispose of the property of the donee was, of no legal validity, because of the want of capacity on the part of the donor to execute such an instrument—as in the case of his infancy—no case for an election arose, (*Hearle* v. *Greenbank*, 1 Ves. Sr. 298;) and the same result was declared where the instrument was so defectively executed as to be without legal effect. *Sheddon* v. *Goodrich*, 8 Ves. 481. Similar qualifications have been applied in this country, (*Jones* v. *Jones*, 8 Gill, 197; *Melchor* v. *Burger*, 1 Dev. & B.

Eq. 634; *Lefevre* v. *Lefevre*, 59 N. Y. 434; *Kearney* v. *Macomb*, 16 N. J. Eq. 189;) although in both countries there have been expressed doubts as to the propriety of the distinction between such cases and those which are subject to the general rule. The reason upon which this class of cases rests seems to be that the retaining by the donee of the subject of the attempted transfer does not disappoint the instrument, since the law has already avoided and nullified it. There may, perhaps, be added, as being within the exception or limitation, cases where the effect of the transfer, if held effectual, would be to violate some established rule of public policy, such as a statute against perpetuities; in which cases the court would not aid the attempt by enforcing the doctrine of election. *Woolaston* v. *King*, L. R. 8 Eq. Cas. 165, 175. Whatever may be the extent of this limitation, it does not go so far as to include cases where the invalidity of the attempted transfer arose from want of title in the donor, or from the existence of an estate in the property in the donee, and over which the donor had, hence, no disposing power. Indeed, that is just the class of cases in which the rule has been applied. As was said in *Thellusson* v. *Woodford*, *supra:* "That is the circumstance that creates election."

This case falls within the general rule. There is no invalidity in the execution of the will, nor in the personal capacity of the testator to make a devise of property. The will would effect of itself a valid disposition of the lands, except for the estate therein conferred by statute upon the wife. It is only because of her title in the property that his disposing power is qualified. Only as her rights in the property stand in the way is the husband prevented from devising it. He may devise the whole estate, and, unless she shall survive him, the devise of the whole is effectual. The devise of the whole estate, unaffected by any act on her part, is in legal effect subject to her statutory right, and does not contravene a policy of the state, so as to be, for that reason, illegal or void. And, even if she survives him, she is not compelled to become endowed with the title; she may relinquish her right, or, even after it is vested by his death, she may bar herself of it, and no rule of public policy is violated. The case, in brief, is the ordinary one of a testator giving by will that to which

the donee had no right except by the will, and by the same instrument disposing of lands which he had not the power to transfer, because of the title therein in the donee. The doctrine of election is applicable if the will is to be construed as making provision for the widow in lieu of her legal estate, and not merely as cumulative thereto, so that the intention of the testator is apparent that she shall not enjoy both.

We do not wish to be understood, from any form of expression which we have employed, as holding that the widow must make an affirmative election to take her statutory estate before she will be entitled to its enjoyment. It is probable that in this state, in the absence of any election, she would be endowed of what the statute confers upon her, and would be entitled to the testamentary benefit only by an election to take it, or by some act equivalent to such an election. The question here is whether she is to be deemed to have so elected.

The power of the courts of Wisconsin to exercise an election in behalf of the appellant is not a matter of doubt, assuming that none had been first made elsewhere. The only question presented in this connection is as to the scope and effect of that election. So, too, our probate court, which had to administer upon real property here, had from necessity, and as incident to the exercise of its jurisdiction concerning the property, the power to make an election in behalf of the widow, provided none had already been made. *State* v. *Ueland*, 30 Minn. 277. And it is claimed by the appellant that the election of the probate court, being first made and having reference to these lands, should control. The judicial proceedings which resulted in an election being made for the widow were instituted in the circuit court of Wisconsin by the executors prior to the commencement of this proceeding in the probate court of this state. Judgment was first rendered by our probate court, and an appeal taken to the district court, upon *questions of fact and law*, and a trial had *de novo* in that court, as contemplated by the statute in such cases. Gen. St. 1878, c. 49, §§ 15, 17. While that appeal was pending, and before the trial in the district court, the Wisconsin suit had been determined by the court of last resort, upon appeal from the circuit court, and its decis-

ion made, (*Van Steenwyck* v. *Washburn*, 59 Wis. 483) by which, reversing that of the circuit court, the will was construed as expressing the intention of the testator that the specific provision made in her behalf should be in lieu of her legal rights in the property, and, an election being therefore necessary, that court, exercising its jurisdiction in her behalf, decreed that she take under the will. Upon the trial subsequently had in our district court, these facts were shown by supplemental pleadings and by proof. The question now arises whether, upon that trial, which is here in review, the election made by the probate court was final. Did it conclude the parties in the subsequent retrial of the same cause? Was the subject *res adjudicata?*

The election made by the probate court was a determination in a judicial proceeding, and, like other judicial determinations, was subject to be affected by the course of the procedure. In whatever manner the appeal to the district court affected the judgment appealed from, it had the same effect as to the election, which was an essential part of that judgment. By the appeal upon questions of both law and fact, the cause became *lis pendens* in the district court. *Fullman* v. *Gilman*, 1 Minn. 153, (179;) *Bryan* v. *Farnsworth*, 19 Minn. 198, (239.) It was to be tried *de novo*, and such a decision rendered upon all of the questions involved, including that of election, as the justice of the case, as presented upon that trial, should require, uncontrolled by the decision appealed from. In such a case the judgment appealed from could not have effect as a final adjudication, concluding inquiry, and forbidding a contrary determination as to the matters in issue. That would be opposed to and defeat the very purpose for which a trial *de novo* is allowed by the statute. The maxims, *nemo debet bis vexari pro una et eadem causa*, and *interest reipublicæ ut sit finis litium*, which express, upon considerations of individual right and of public interest, the reasons of the doctrine of *res adjudicata*, have no possible application in such a case. Upon the trial, then, of this cause in the district court, the question of what election should be made in behalf of the widow was to be determined in the same manner as though no election had been made by the probate court. The only election by which the determination in this case could be affected was that which had then been finally made by

the supreme court of Wisconsin. *Capehart* v. *Van Campen*, 10 Minn.
127, (158;) *Curtiss* v. *Beardsley*, 15 Conn. 518, 521; *Bank of North
America* v. *Wheeler*, 28 Conn. 433, 440.

Was the election in Wisconsin such as precluded a different elec-
tion being made in another jurisdiction, and in respect to real prop-
erty there situate, and hence beyond the jurisdiction of the courts of
Wisconsin? The appellant contends that that election in Wisconsin
was limited to a choice merely between the provisions of the will and
dower in lands within that state, and that it has no effect and can
have none as to lands in this state. An election by a court in
behalf of its insane ward must stand for and be considered as the
election of the party himself. Whether made by a party in person,
or by a court having authority to act in his stead, the result must be
the same. Once effectually made, and the thing chosen having been
thus acquired, it cannot be that whatever stands over against that
thing as the other alternative is still subject to his will. If, in the
course of administration in the state where the will was executed,
and where the testator was domiciled at the time of his death, the
widow, being sane, had declared her election to take under the will,
there can be no doubt that that election would have concluded her
everywhere. Ordinarily, and in this case, there are but two alterna-
tives presented for election: one, the bounty offered by the terms of
the will; the other, that to which the widow is entitled as a legal
right, independent of the will, wherever it may be found and by what-
ever law it may be conferred. The testator proposes for her choice
but the two alternatives. In fact, he, presumably knowing her ab-
solute legal right respecting his property, proposes but *one* thing; that
is, the benefit specially provided in the will. Assuming that she may
accept it, he, in this case, disposes of his other property, at home and
abroad alike, as though she had no interest therein. The testator
offers her simply certain testamentary benefits. The *law* (of Wiscon-
sin and Minnesota, and wherever else real property may be situated)
offers her estates in lands, in dower and in fee. If she accepts his
offer she relinquishes her legal right in all his lands.

It is true that the supreme court of Wisconsin did not assume
jurisdiction over lands in Minnesota. But it did rightfully exercise

jurisdiction to do what its ward, if sane, might have done; it elected, in her behalf, to take the bounty which the testator offered. This choice determines the whole subject. It commits her to an acceptance of the will, and she cannot also take *against* the will either in that state or in this.

We have thus far assumed that the will discloses the intention of the testator that the provision specially made for the wife should be in lieu of her legal rights in the property and not cumulative, and that the instrument is to be so construed. That this is the proper construction and effect of the will was adjudicated between the parties contending here by the judgment of the supreme court of Wisconsin, above cited. It is well understood that, under the federal constitution, the doctrine of *res adjudicata* applies with respect to the judgments of other states of the Union, as it does with respect to domestic judgments. *Cone* v. *Hooper*, 18 Minn. 476, (531.) So long as the court of a sister state acts within the scope of its own authority, within its jurisdiction, the same conclusive effect attaches to its judgments when the subject-matter is afterwards brought in issue between the same parties, in whatever state it may be. Of course, the principle of state sovereignty to which we have already referred, forbids that the tribunals of one state should assume to affect directly by their judgments the title to lands within another state. But this is only a denial, in another form, of the jurisdiction of the former tribunal to so adjudicate. The real question in all cases seems to be one of jurisdiction, and we think it is impossible for us to admit that the Wisconsin court had jurisdiction to adjudicate as to the true construction of this will, and at the same time deny the conclusive effect of its judgment between the same parties in this action.

That the Wisconsin court had jurisdiction to entertain the question of the construction to be put upon the will, and to adjudicate thereon, is apparent and need not be discussed. It is equally apparent that that adjudication was final, and concluded the parties to that controversy, which embraced all the parties interested. Neither this appellant nor these respondents would have been heard in that state to question the correctness of the construction of the will thus judicially declared. We feel no doubt that the same conclusive effect should be

attributed to that judgment here and in this case, which involves the same question and is between the same parties. The adjudication was neither beyond the jurisdiction of the foreign court, nor did it interfere with our state sovereignty. The disposition of the lands in this state, and in the course of administration here, is effected, not by force of the decree of the foreign court, but by force of our own laws and by the decrees of our own courts. Our law recognizes a final adjudication upon the merits and between the proper parties, determining the true import of such an instrument, as concluding the parties to the controversy, whether that adjudication was in a domestic tribunal of competent jurisdiction, or in a tribunal of another state having jurisdiction. In giving effect to such an adjudication we are enforcing our own laws and not the laws of another state.

Our conclusion is that the judgment of the district court should be affirmed. Ordered accordingly.