STATE ex rel. JOSEPHINE L. PERCY v. T. J. HUNT and Others.[1]

January 30, 1903.

Nos. 13,251—(223).

Will—Surviving Spouse.

Laws 1893, c. 116, amending Laws 1889, c. 46, did not change the law in respect to the right of the disposition by a husband or wife of personal property by will as against the claims of the surviving spouse.

Election in Behalf of Incompetent Widow.

In making election whether to renounce the will and take under the statute or to take under the will, where the surviving spouse is insane

[1] Reported in 93 N. W. 314.

or incompetent, the court should take into account not only the value of the property, but also the circumstances surrounding the life and condition of the parties, the contents of the will, and the probabilities as to what the survivor would do were he able to select for himself.

Application having been made to the probate court for Dodge county by the guardians of Catherine Robinson, incompetent, to determine in behalf of the incompetent whether she should take under the will of Prosper Robinson, deceased, or renounce the same and take her share of the estate as provided by statute, a decree was made that the incompetent renounce the will and take under the statute. Whereupon plaintiff Josephine L. Percy, executrix and residuary legatee, appealed to the district court for said county, and upon her petition a writ of certiorari was also issued from said district court requiring defendant Hon. T. J. Hunt, probate judge, to certify to the district court for review the proceedings had before him. The case was tried before Buckham, J., who made an order affirming the decree of the probate court. From a judgment entered pursuant to the order, plaintiff appealed. Reversed, and remanded with instructions.

*Samuel Lord*, for appellant.

*Taylor & Taylor*, for respondents.

*Childs, Edgerton & Wickwire*, for children of incompetent.

LEWIS, J.

In 1901 Prosper Robinson died testate, leaving surviving him his aged, helpless, and incompetent widow, and their adopted daughter, Mrs. Josephine L. Percy. His estate consisted of real estate of the value of about $25,000 and personal property of about the value of $28,000. The will was executed in July, 1900, and contained the following provision for his wife:

"First. After all my lawful debts and funeral expenses have been paid, I give and will the use of all my property, both real and personal, or as much of it as is necessary, to care for my dear wife during her life; and, if there is not enough income to provide her with all that she needs to have,—the best provided home, best nurses to care for and make her comfortable, including medical attention,—the use of property sufficient to provide for her every want or need until her death; then I will that a suitable monument be placed at her grave."

The daughter, Mrs. Percy, was made the executrix and residuary legatee. Special bequests were made, amounting in all to about $9,000. After the testator's death, respondents, William Ruth and L. M. Blanch, were appointed by the probate court guardians of the person and estate of the widow, and they petitioned the court to make an election for her either to accept the provisions of the will or renounce it and take under the statute. Thereupon, after a hearing upon such petition, the court ordered and decreed as follows:

"That said Catherine Robinson is required to elect between the provisions made for her in said will and the interest provided for her by statute, and which would have descended to her had said Prosper Robinson died intestate; that, said widow having been found incompetent, as aforesaid, and by reason of such incompetency unable to make such election, this court should make such election for her; and this court having duly elected for and in behalf of said widow that she take the statutory interest which would have descended to her had said Prosper Robinson died intestate, and waive all the provisions made for her in said will, and all the benefits under the same, and renounce and refuse to accept the provisions so made in such will."

The matter was taken to the district court by appeal and certiorari, and by stipulation the two proceedings were consolidated and tried together on the merits de novo upon all of the records and an agreed statement of facts. The district court in all things affirmed the order of the probate court, proceeding de novo, and, acting for and on behalf of the widow, Catherine Robinson, incompetent, elected for her to renounce and refuse the provisions made for her in the will of her husband, and take such interest of his estate as is provided by the statute of this state, and as would have descended to her had her husband died intestate. From the judgment entered therein appeal was taken to this court.

Two questions require our consideration. First. Was the widow, upon renouncing the will, entitled to a third interest in decedent's personal property? Second. Was the proper rule applied by the court in electing for the widow to renounce the will and take under the statute?

1. Prior to the amendment of Laws 1893, c. 116, the first paragraph of section 70, c. 46, Laws 1889 (known as the "Probate Code"), reads as follows:

"When any person dies possessed of any personal estate or of any right or interest therein not lawfully disposed of by his last will and testament, the same shall be applied and distributed as follows."

Subdivision 1, § 70, provided that the widow should have certain household goods and other personal property of decedent's, not exceeding $500 in value. Subdivisions 3, 4, and 5 made provisions for certain allowances to the widow during the settlement of the estate, and subdivisions 6 and 7 read as follows:

"6. The residue, if any, of the personal estate, shall be distributed in the same proportion, and to the same persons, and for the same purposes, as prescribed for the descent and disposition of real estate."

"7. All of the foregoing provisions shall apply as well to a surviving husband as to a surviving wife."

By Laws 1893, c. 116, § 6, subdivision 6 of section 70 was amended in the following language:

"That section 70 of said chapter 46, be, and the same is hereby amended by striking out after the word 'therein,' in the second line of said section, the words 'not lawfully disposed of by his last will and testament,' and by adding to subdivision 6 of said section, after the word 'estate,' in the third line thereof, the words 'except as otherwise disposed of by the last will of any deceased person.' "

Those portions of Laws 1889, c. 46, above referred to, had stood as the law of this state for many years, and have been construed by this court in the cases of Johnson v. Johnson, 32 Minn. 513, 21 N. W. 725, and In re Rausch, 35 Minn. 291, 28 N. W. 920, where it was held that the husband might dispose of his personal property by will, and that the surviving wife had no right or interest therein as against the will. It must, therefore, be conceded that prior to the amendment in 1893 the surviving widow could be cut off by will from any interest in her husband's personal property. Did that amendment effect a change in the then existing law? The right of the surviving spouse to renounce the will and take

under the statute was first introduced by Laws 1889, c. 46, § 5, but, as the law then stood, it had reference simply to real estate. If the amendment had consisted in simply striking out the words in the first part of section 70, and no addition had been made to subdivision 6, it would be very clear that it was the intention of the legislature to change the law as laid down in those cases, but we are to determine whether such intention is to be inferred by the fact that the words mentioned were stricken out in the first part of section 70, and practically the same language re-enacted in a subdivision thereof. It seems to us that the language of the addition to subdivision 6 is of the same effect as the language stricken out. If the words, "not lawfully disposed of," etc., implied that the surviving spouse could be cut off by the will from the one-third interest in the personal property, then why do not the words, "except as otherwise disposed of by the will," etc., imply the same? If the exception mentioned in the amendment to subdivision 6 was consistent with the law as it then existed, it should be construed in harmony with that law. To what else can the exception refer? It certainly does not refer to property disposed of by will other than the one-third interest of the surviving spouse. Whatever may have been the intention in making the change, we are not at liberty to read into the language of the amendment a purpose which is not clearly expressed, especially when the result thereof is to make a radical change in the existing law. Our conclusion upon this point is that the amendment did not effect a change.

2. The next question to be considered is, did the probate and district courts apply the proper rule in making the election for the widow? From the order of the probate court, found in the record, it would seem that the court was somewhat influenced in its action in electing to renounce the will and take under the statute by the fact that the guardians had given ample bonds to insure the safe and proper administration of the estate, and would continue to be under the court's jurisdiction and control. And we understand from the order made by the district court and the attached memorandum that the court was influenced in its decision in affirming the probate court by the fact that under our

statute the widow was entitled to one-third of the personal property as well as of the real estate, and that a third of the entire estate would be more than ample to properly care for the widow for the length of time she would probably live.

It is insisted upon the argument that the proper rule was applied by the trial court, which was that, in a case where a person is rendered incompetent to make an election by reason of insanity, it is to be made by the court for such person from his or her standpoint if sane; that it necessarily follows that, if such incompetent person were of sound mind, and able to judge, a selection would be made based on the greatest value. The general rule applied in the chancery courts of England was that in case of incompetency the court would select for the incompetent by doing that which would be of the greatest benefit to the person for whom the court was acting, and from the English authorities we do not find that the question of value alone was necessarily decisive of the question. The rule is stated in Oxenden v. Lord Compton, 2 Ves. Jr. 69, as follows:

"The orders that are made by persons charged with the custody of lunatics are appealable to the king in council. In the series of them there is one general principle, though I do not say it is without some possible deviation, that the general object of the attention of the administrator is solely and entirely the interest of the lunatic himself, and with regard to the management of the estate solely and entirely the interest of the owner, without looking to the interest of those who, upon his death, may have eventual rights of succession; and nothing could be more dangerous or mischievous than for him to consider how it would affect the successors. * * * Therefore the courts have always shut out of their view all consideration of eventual interests, and considered only the immediate interest of the person under their care."

There are very few cases in the United States covering this question. Of those where the subject has been either directly or indirectly noticed, the following may be mentioned: In Penhallow v. Kimball, 61 N. H. 596, the court considered the question whether

it or the widow's representatives should make the election, and, in reference thereto, stated generally:

"A husband's right to dispose of his estate by will is limited by his widow's right to waive any provision in her behalf and to take under the statute. The right to elect to take under the will or under the statute is given to her, and not to those who may inherit from her. * * * The right does not pass to her representatives at her decease. It is not necessarily a question of mere pecuniary advantage. Her knowledge of the family arrangements and of the motives and wishes of her husband, and other considerations better known and appreciated by her, may have weight and influence with her in determining her election. * * * In England the court of chancery has the care of the persons and estates of idiots and lunatics, and in cases of election the jurisdiction is generally exercised by that court. * * * When necessary, the matter is referred to a master, to inquire what will be most beneficial to the lunatic. The practice as to infants is the same; also as to married women in jurisdictions where their common-law disabilities have not been removed. * * * In making such election the court is guided by considerations for the benefit of the lunatic, without regard to what the advantage may be to his heirs. If, in this case, it is found that the effect of an election to waive the provisions of the will will be to divert property from the channel in which the testator intended it to go, and, if the diversion is not required by the wants and circumstances of the widow, the prayer of the bill cannot be granted."

In re Van Steenwyck v. Washburn, 59 Wis. 483, 17 N. W. 289, there was involved a large estate. The widow had been insane for more than twenty years at the time of the execution of the will, which provided, after making ample allowance for her care and maintenance by setting aside an annual income of $5,000, that the residue of the estate should be devoted largely to charitable and public purposes; and the court, being required to elect for the widow as to whether she should renounce the will, chose to abide by its terms, stating, in the course of the opinion, that under the circumstances of that case the court would be justified in departing somewhat from the usual rule of selecting the property most

valuable, for the reason that the value of the property was not necessarily determinative of what was for the widow's best interests; that her statutory share would amount to $600,000, but, being aged and hopelessly insane, the provisions of the will for her maintenance and care were ample. The court also stated that some regard was due the benevolent intentions of the testator towards his kindred by blood and those having claims on his bounty; to his munificent bequests for public and charitable purposes; and that an election under the will upon the principle of value alone would greatly interfere with the scheme of the will, and, to a large extent, defeat its purpose; that the duty of the court is to exercise a sound discretion in the matter, considering everything having a legitimate bearing on the election to be made. It would seem, therefore, that the Wisconsin court was of the opinion that there was no absolute rule guiding a court in making an election, save that the interests of all parties concerned be well considered in determining what is best to be done.

Our own court has never passed upon this question, but, in the first place, we are impressed with the idea that the subject must be considered from the incompetent person's standpoint, in the light of all the facts, and the matter of mere property value may not necessarily be the guiding motive. At the time of the execution of the will in 1900 the wife had been a confirmed invalid for more than ten years, and was then seventy-two years old. She and her husband had lived together for more than forty years, and their marriage relations were those of utmost devotion and trust. About two years before the husband's death the wife was stricken with apoplexy, and for more than nine years prior to his death Mr. Robinson had retired from active business for the purpose of devoting his time and attention to the care of his invalid wife. The wife's granddaughter, Josephine L. Percy, had been taken into the family when a child, and adopted, and Mr. Robinson had no children of his own. The will makes bequests to the extent of something like $9,000 to the various members of his wife's family, and their adopted daughter is made the residuary legatee. The deplorable condition of the widow makes necessary the constant attendance upon her of two trained nurses and a regular phy-

sician.   It is evident that the first object which the husband sought to effect was to insure for his wife the most ample provision for all possible care and kindly treatment, and with that intent his entire estate was put into the hands of the daughter, in trust. It is to be presumed that under such circumstances the husband and wife had consulted with each other in respect to the disposition of the property, and it should be assumed that this will was made by the husband, if not after actual consultation with his wife, at least with a view of meeting her wishes in respect to the property and the family.   If the court adopts the view that merely the value of the property is to be considered in making an election for the widow, then all of these considerations must be set aside. On the other hand, if the court is not bound by that narrow principle, but should determine, under all the circumstances, what is best for the widow, then it seems to us that the provisions of the will must be accepted.

The question cannot be determined alone by deciding what the survivor would do if sane, because such a condition is impossible. Whether one-third of the estate would be more valuable would depend upon her ability to manage and care for it and her annual requirements.   According to the stipulated facts, the expense of caring for this woman amounts to $250 a month.   The value of her interest in the estate, should she elect under the statute, even if the personal property were taken into consideration, would be about $17,000, and at the rate of $3,000 for her annual expenses, less than six years would absorb her entire estate; and, if the personal property be not taken into account, her third of the real estate would be but $9,000.   So, from either standpoint, it seems to us, whether from the actual value of the property, or considering the benefit to be derived by the widow, the selection must inevitably be to take under the will, thus placing at her disposal the entire estate for the remainder of her life.   Under the will the executrix is made the trustee, charged with the trust of administering this entire estate for the purpose, first of all, of caring for the widow according to the desire of the husband.   All of the bequests are subject to the trust, and distribution cannot be made until the death of the beneficiary.   The district courts have juris-

diction to see that the trust is properly administered, and, if necessary, to require a proper and sufficient bond to secure the safety of the estate.

Judgment reversed, and ordered that election be made for the widow to accept the terms of the will, and that judgment be entered accordingly.