ADA F. STEVENS (BY NEXT FRIEND) v. NEW JERSEY AND HUDSON RIVER RAILWAY, &c., COMPANY.

Argued November 7, 1906—Decided February 25, 1907.

1. A motorman operating a trolley car should ordinarily have his car under such control when approaching a switch which, if open, will turn his car upon a siding where another car is standing, as will enable him to bring it to a stop before colliding with the standing car, in case the switch is not closed; and failure in this regard is lack of reasonable care, unless he have probable cause for believing the switch to have been properly set.
2. Where, in an action for personal injuries, the amount of the compensation asked for, and awarded by the jury, is rested upon the claim that the injuries are permanent in their character, the verdict cannot be permitted to stand if it clearly appear that the time which has elapsed between the happening of the accident and the rendition of the verdict is so short as to make it impossible to determine with reasonable certainty whether such injuries are of a permanent or merely of a temporary nature.

---

On defendant's rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON and GARRETSON.

For the rule, *Edmund W. Wakelee* and *Gilbert Collins.*

*Contra, Archibald C. Hart* and *Ernest Koester.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The plaintiff in this case, a girl seventeen years of age, was a passenger upon one of the summer cars of the defendant company on the night of September 9th, 1905. At a place called Grantwood the Fort Lee branch of the defendant company's railway leaves the main line. When the car upon which the plaintiff was riding reached that point, it turned off from the main track and entered upon the branch line. After having passed a very short distance beyond the junction point it was brought to a stop, and while remaining at a standstill it was run into by another car which was following it. The latter car should have continued upon the main line past the point where the Fort Lee branch diverged, but failed to do so owing to the fact that the switch had not been replaced in its normal position after the car upon which the plaintiff was riding had passed over it. The collision was forcible enough to throw the plaintiff forward and bring her head in contact with the back of the seat in front of her. Although she did not show any immediate signs of serious injury, a day or two afterward symptoms of hysteria appeared, and gradually hysterical or psychical paralysis developed, destroying the use of her right arm and leg. She seeks by this action to recover from the defendant company compensation for the injury received by her, upon the ground that the accident was due to the negligence of the motorman who operated the car, which collided with that upon which she was riding, in running at an excessive rate of speed as it approached the switch. The jury so found and awarded her as compensation the sum of $15,000.

Two reasons are assigned for setting aside the verdict and

awarding a *venire de novo*. The first is that the proofs show the accident was caused by the failure to turn back the switch after the first car had passed over it and not by the running of the second car at an excessive rate of speed. As a general rule, it may be said that in the operation of a trolley car the duty rests upon the motorman to use reasonable care to so regulate the speed at which he runs it as not to jeopardize the safety of the passengers, either in the car which he is operating or those which happen to be in near proximity to it. Consequently, when approaching a switch which, if open, will turn his car upon a siding or branch line where another car is standing, proper care requires that he should have his car under such control as will enable him to bring it to a stop before colliding with the standing car in case the switch is not closed, unless he has reasonable ground for believing the switch to be properly set for the passage of his own car.

So far as the proofs in the present case disclose, the motorman on the second car had no reason to expect to find that the switch at Grantwood had been closed after the passage over it of the car which had just entered upon the Fort Lee branch. For anything that appears to the contrary, the duty of turning the switch back may have been one which rested upon him. It is, perhaps, not going too far to say that this is the natural presumption, for it is a matter of common knowledge that it is the ordinary practice in the operation of trolley roads for each motorman who approaches a switch with his car and who finds it closed against him, to open it for the passage of his own car and leave it to those who follow him to close it when it becomes necessary to do so. Under the circumstances of this case we consider that the jury was entirely justified in finding that the motorman in charge of the second car, in running it as he approached this switch at such a rate of speed as to make it impossible for him to bring it to a stop after he took the switch until it had collided with the car in which the plaintiff was a passenger, was guilty of operating it in a negligent manner, and that this negligence was a proximate cause of the plaintiff's injuries.

The second ground upon which we are asked to set this. verdict aside is that the damages are excessive. As has already been stated, the plaintiff is suffering from hysterical or psychical paralysis. Whether or not she will recover from this condition was admitted by all of the medical experts produced on her behalf at the trial to be a matter of uncertainty. Most of those called on behalf of the defendant expressed the opinion that she would ultimately do so. It seems quite clear from an examination of the testimony of the various experts that the lack of harmony in the views expressed by them was largely due to the fact that sufficient time had not elapsed (the accident occurred in September and the trial took place the following April) to enable it to be determined with any degree of certainty whether the paralytic condition of the plaintiff was permanent or temporary in its character. It is manifest from the amount of the verdict that the jury, in order to avoid doing injustice to the plaintiff, assumed that it was permanent. If it turns out to be otherwise, the verdict does a grave injustice to the defendant. If upon this rule we should . deal with the verdict on the theory that the plaintiff will make a complete recovery and she fails to do so, great injustice will be done to her. The medical testimony on both sides convinces us that the lapse of a reasonable time will afford an opportunity to determine with a fair degree of certainty what the prospects of recovery are. The situation which the case presents is similar to that which existed in *Searles* v. *Elizabeth, &c., Railway Co.,* 41 *Vroom* 388, and in *Kanen* v. *Philadelphia and Reading Railroad Co., Id.* 619, and requires that the verdict be set aside in order that the parties may have an opportunity, by a retrial of the case, to obtain the benefit of the added light which the lapse of time will throw upon the question of the permanency of the plaintiff's injuries.

The rule to show cause will be made absolute.