## IN RE ESTATE OF ANNIE CAREY.
### JAMES M. CAREY AND ANOTHER v. ROBERT D. BROWN AND ANOTHER.[1]

On Rehearing.[2]

No. 29,895.

March 29, 1935.

---

[1]Reported in 260 N. W. 320.
[2]This opinion supersedes former opinion, filed September 21, 1934, but not published.

*Smith, Callahan* and *Carlson, Charles F. Kelly, H. Stanley Hanson,* and *William J. Hughes, Jr.,* for appellants.

*Loring & Anderson,* for respondents.

JULIUS J. OLSON, JUSTICE.

This is an appeal by the representatives of the estate of Edward Carey, deceased, from a judgment of the district court of Hennepin county setting aside a decree of distribution of the probate court of that county in the matter of the estate of Annie Carey, deceased wife of said Edward Carey.

The cause was submitted in the district court upon an agreed statement of facts consisting of 14 paragraphs, to which the court added finding numbered 15 (XV). As the issues here presented are founded upon these facts, we deem it proper to quote same in full:

"I. Annie Carey, the above named decedent, died testate on the 3rd day of October, 1930; that at the time of her death she was a resident of the county of Hennepin, state of Minnesota, and a citizen of the United States.

"II. On the 9th day of October, 1930, a petition to prove the last will and testament of said Annie Carey was duly filed in the Probate Court of Hennepin County, Minnesota. Said petition was signed by Robert D. Brown and William M. Haslett, executors named in said last will and testament. That said Robert D. Brown, for a long time prior to the death of Annie Carey, acted as her financial agent and adviser.

"III. On the 3rd day of November, 1930, the Probate Court of Hennepin County, Minnesota, duly made its order allowing said will and entered its decree of Probate and order for bond and letters.

"IV. On the 5th day of November, 1930, Robert D. Brown and William M. Haslett filed their bond and oath as executors and thereupon letters testamentary were duly issued to said executors and since said date they have been and now are duly qualified and acting as executors of the estate of said Annie Carey, deceased, and that they have also been duly appointed by order of the above named court as trustees under the last will and testament of said Annie Carey, deceased, a certified copy of such order has been duly filed in the matter of the estate of Annie Carey, deceased, in the Probate Court of Hennepin County, Minnesota, said proceedings being, for convenience, referred to as file No. 39297 of the files in the office of the clerk of the Probate Court of Hennepin County, Minnesota, which file was duly offered and received in evidence together with all of the documents therein contained in accordance with the stipulated facts.

"V. Said Annie Carey died and left her surviving as her sole heir at law Edward Carey, her spouse. That no child or issue of any deceased child survived said Annie Carey.

"VI. On the 19th day of July, 1921, Edward Carey, then of the age of about fifty-eight (58) years, spouse of said Annie Carey, was duly declared insane and that on the 27th day of August,

1921, the Probate Court of Hennepin County, Minnesota, duly issued its order committing the said Edward Carey to the State Hospital at Rochester, Minnesota.

"VII. On the 10th day of April, 1930, Annie Carey was duly appointed guardian of the person and estate of Edward Carey and acted in such capacity until her death. That during the period of time that the said Annie Carey was guardian of Edward Carey, the said Edward Carey was placed in the Riverview Hospital at Minneapolis by said Annie Carey and all expenses of maintenance were paid by her. Said Riverview Hospital is a private institution located in Minneapolis, Minnesota.

"VIII. On the 25th day of November, 1930, the final account of said Annie Carey, as guardian of Edward Carey, was duly filed by the executors herein named and said account was duly allowed and the sureties on her bond discharged.

"IX. On the 12th day of December, 1930, Robert D. Brown was appointed guardian of said Edward Carey, duly qualified as such and continued to act in such capacity until the death of said Edward Carey. That the said Robert D. Brown, from and after his appointment as guardian of Edward Carey, exercised control and custody of the person of said Edward Carey. Said Robert D. Brown, as guardian, from the date of his appointment as guardian to the date of the death of said Edward Carey, provided such care and comfort for said Edward Carey as had been previously arranged for him by his wife, all expenses thereof were paid out of the funds in the possession of said Robert D. Brown and William M. Haslett as executors of the estate of Annie Carey, deceased, at the guardian's request.

"X. That all proceedings had in said guardianship are referred to as file No. 15083 in the office of the clerk of the Probate Court of Hennepin County, Minnesota, which file was duly offered and received in evidence together with all documents therein contained in accordance with the stipulated facts.

"XI. The said Edward Carey died intestate on the 30th day of June, 1931, and that upon his death all funeral expenses were paid out of funds of the estate of Annie Carey, deceased, and that the

said Robert D. Brown and William M. Haslett, as executors of the estate of Annie Carey, deceased, duly entered as a credit in the final account filed by them of their administration of the estate of Annie Carey, deceased, all moneys expended by them at the request of the guardian for the care and comfort of Edward Carey from the 3rd day of October, 1930, to the 30th day of June, 1931. That by stipulation filed in the office of the clerk of the Probate Court and included in file No. 39297 the funeral expenses necessary to bury the said Edward Carey are to be allowed as a credit to the executors of the last will of Annie Carey. That the final account of said executors was duly allowed by the Probate Court by its order duly made and entered on the 11th day of January, 1932.

"XII. That after the death of said Edward Carey a petition was filed by Mary E. Miller, a sister of said Edward Carey, requesting the appointment of Robert D. Brown as administrator of the estate of Edward Carey. That on the 12th and 13th days of August, 1931, written objections to said appointment were filed by Ellen M. Machow, Eva M. Carey, Ruth Cassidy, Rose Ellen Landry, nieces of said Edward Carey; Anthony F. Carey and James M. Carey, brothers of said Edward Carey; and Kate M. Hudson, Arthur O. Carey, Grace M. Campbell and James L. Carey, nieces and nephews of said Edward Carey, and upon the hearing of said petition the said Mary E. Miller and Robert D. Brown consented to the appointment of Anthony F. Carey and James M. Carey as administrators of the estate of Edward Carey, deceased, and they are now the acting and qualified administrators of said estate.

"XIII. On the 26th day of August, 1931, Anthony F. Carey and James M. Carey, as administrators of the estate of Edward Carey, deceased, filed a petition in Probate Court of Hennepin County, Minnesota, in the matter of the estate of Annie Carey, deceased, praying for a decree of distribution assigning to said administrators such portion of the real and personal estate of said Annie Carey as said Edward Carey would have received as surviving spouse under the statutes of the state of Minnesota if the said Annie Carey had died intestate. That said petition was granted by the Probate Court on the 11th day of January, 1932, and said court entered its

decree of distribution assigning to said administrators the proportion prayed for in their petition.

"XIV. That a stipulation was executed and filed by the interested parties admitting the foregoing facts.

"XV. That, for approximately nine months after the death of Annie Carey, Edward Carey, her incompetent surviving spouse, through his duly appointed and acting guardian, accepted the benefits made for him by the said testatrix and that said Edward Carey, by and through his guardian, chose to act under and adopt the provisions of the will and that such acts of said guardian were inconsistent with an intention or an election to renounce the will and constituted an election in equity to accept the provisions made for him by the said testatrix in her last will and testament."

As conclusions of law the court found:

"I. That James M. Carey and Anthony F. Carey, as administrators of the estate of Edward Carey, deceased, and as personal representatives of his estate, have no right of election and that their petition should be and is in all things denied.

"II. That the guardian of Edward Carey, incompetent spouse of Annie Carey, made an election in equity to accept the provisions of the will of Annie Carey and that said surviving spouse was bound thereby.

"III. That the Probate Court shall forthwith vacate its order heretofore made granting the said petition of the administrators of the estate of Edward Carey, deceased, and vacate its decree of distribution made therein and shall make its order assigning and distributing said estate in accordance with the provisions of the will of said testatrix.

"IV. It is ordered that said matter be and is hereby remanded to the Probate Court of Hennepin County, Minnesota, with direction to enter its order denying the said petition of James M. Carey and Anthony F. Carey, as administrators of the estate of Edward Carey, deceased, and as his personal representatives.

"V. That the said court is hereby directed to make and enter its final decree of distribution assigning and decreeing the residue

of said estate to the trustees named in the will of said testatrix in accordance with the terms, conditions and provisions thereof.

"VI. That the clerk of the above named court is hereby directed to certify this final judgment and order to the Probate Court of Hennepin County, Minnesota, as provided by statute.

"Let judgment be entered accordingly."

Judgment was thereupon entered, and this appeal is from that judgment.

Mrs. Carey's will provides: For the payment of funeral expenses, expenses of administration, including the funeral expenses of her husband when he should die; that the executors pay the sum of $300 to the diocese of St. Paul as a trust fund for the use of the cemetery office, the interest on this fund to be used for the care, upkeep, and decoration of the burial lot in St. Mary's cemetery in Minneapolis; that a sum not exceeding $700 be used by the executors in the procurement and erection of a suitable monument. All of these items were by the terms of her will to be considered as a part of the funeral expenses in the matter of her estate.

All the remainder of her property she gave, devised, and bequeathed in trust to Robert D. Brown and William M. Haslett as trustees, for the use and benefit of her husband, Edward Carey. She gave the trustees full power to manage, sell, mortgage, lease, encumber, convey, maintain, or operate all of her property to the same extent and in the same manner as she could do if living, without being required to make any application to any court for authority in that behalf. She recited the fact that her husband had been declared an incompetent and as such unable to care for and preserve his property. She directed that during the remainder of his life he be given every comfort and care which her estate could provide. The trustees were given "full right and power to handle said estate as in their good judgment they deem best," including also the right to sell and dispose of the same and to reinvest the proceeds as they thought best, all for the best interests of her husband. Not only were the trustees invested with the power to use the entire income of her estate, but, if the trustees thought

necessary, they were given "the absolute right," in order "to pro-
vide for his complete comfort," to use all or any part of the prin-
cipal sum. "That no bequests hereinafter made shall be construed
to be a remainder interest or contingent interest in any of my
estate at the time of my death, and shall only become operative
and effective in the event that there is any property remaining in
the possession of said trustees after the death of my husband, but
in no other event." And that "there is no intention to create any
remainder in fee in the beneficiaries hereinafter named nor to
create any interest in my said property contingent or otherwise."
The trustees were not to be required to notify any of the bene-
ficiaries or to secure their consent in any manner whatsoever in
the event the trustees should desire "to mortgage, sell, dispose of,
or deal in any of my said estate as trustees for the benefit of my
said husband."

Paragraph five provides: "Upon the death of my said husband,
Edward Carey, and only in the event that property remains in
the possession of my said trustees upon the death of my said hus-
band; then of the remaining property, whether real, personal or
mixed and wherever situated," specific sums were to be given to
nine named beneficiaries, six thereof being her nephews and nieces
and three thereof charitable institutions. She directed that all of
these be paid in full before any of the bequests mentioned in the
sixth paragraph of her will were to be payable. That paragraph
provides that after the payment of the specific bequests in full,
mentioned in the preceding paragraph, there should be given to
four individuals and two religious organizations therein named
certain sums of money. Two of the bequests are to Catholic clergy-
men, to each of whom is given $500 with the wish that masses be
said "for the happy repose of the souls of myself and my husband."
All the rest, residue, and remainder of her estate, if the estate be
sufficient to pay all the foregoing bequests in full, is to "be divided
share and share alike among all the beneficiaries above named who
are living and surviving at the time of the death of my said hus-
band."

Paragraph eight reads as follows:

"I have made provisions under the terms of this will and named as beneficiaries only such of my next of kin, heirs at law or friends as I desire to participate in the distribution of my estate after the death of my husband, and there are no heirs at law, next of kin or any other person whom I intend to include in this will as beneficiaries and that any person omitted therefrom whether next of kin or heir at law, is intended to be so omitted."

Provision is made for compensation to be paid to the executors and trustees for services to be by them rendered, including necessary sums to be paid counsel for professional services rendered in that behalf.

Respondents were duly appointed trustees under the terms of Mrs. Carey's will by the district court of Hennepin county June 19, 1931.

A brief reference to applicable statutes is deemed necessary. 2 Mason Minn. St. 1927, § 8735, provides:

"Every person of full age and sound mind, by his last will in writing, signed by him, or by some person in his presence and by his express direction, and attested and subscribed in his presence by two or more competent witnesses, may dispose of his estate, real and personal, or any part thereof, or right or interest therein; and the words 'every person' shall include married women."

The sections of the statute relating to descent of property are §§ 8719, 8720, and 8726. Section 8719 relates to the descent of homestead, but as a homestead is not involved in this case it may be eliminated. Section 8720 provides:

"The surviving spouse shall also inherit an undivided one-third of all other lands of which decedent at any time during coverture was seized or possessed, to the disposition whereof, by will or otherwise, such survivor shall not have consented in writing,   *   *   *." The balance of the section is not important here.

Section 8726 relates to descent of personal property. The only material part is subd. 6, which reads:

"The residue, if any, of the personal estate shall be distributed as follows: One-third thereof to the surviving spouse, if any, free from any testamentary disposition thereof to which such survivor shall not have consented in writing."

Section 8722 provides that "if the will of a *deceased parent* makes provision for a surviving spouse in lieu of the rights in his estate secured by statute, unless such survivor, by an instrument in writing filed in the probate court in which such will is proved within six months after the probate thereof, shall renounce and refuse to accept the provisions of such will, such spouse shall be deemed to have elected to take thereunder."

Obviously, upon the facts here appearing, testatrix dying without issue, this section is not operative, and as a consequence the surviving husband became invested immediately upon his wife's death with his statutory share in her real estate. "Under this statute [now § 8720] no testamentary devise of lands within this state, not assented to in writing by the wife or widow of the testator, could, *of its own force,* interrupt the descent of an undivided one-third of the estate to her, in case she survived her husband, or deprive her of the legal right to receive and enjoy such statutory estate. Nor had the devise of these lands, made by this will, the effect to divest the widow of such legal estate." Washburn v. Van Steenwyk, 32 Minn. 336, 348, 349, 20 N. W. 324, 326.

This rule has been consistently followed in our subsequent decisions. Byrnes v. Sexton, 62 Minn. 135, 64 N. W. 155; Hentges v. Hoye, 158 Minn. 402, 197 N. W. 852; Dunnell, Minn. Prob. Law, §§ 77, 1060, 1073.

It seems clear therefore that the surviving husband in the instant case, having such vested interest, was not required to renounce the will or make a formal election to take under it. He could not be divested by mere inaction because "the consent of the surviving spouse is necessary to give vitality to a bequest or devise of property which will affect" his statutory interest. Hentges v. Hoye, 158 Minn. 402, 407, 197 N. W. 852, 854.

Respondents take the view that the right of election is personal and as such died at the moment of Mr. Carey's death. The trial court so found and ordered that appellants' petition "should be and is in all things denied." That is the general rule and is abundantly sustained by the decisions. Tracy v. Tracy, 79 Minn. 267, 82 N. W. 635; Nordquist v. Sahlbom, 114 Minn. 329, 131 N. W. 323; Boeing v. Owsley, 122 Minn. 190, 142 N. W. 129; Butler v. Butler, 180 Minn. 134, 230 N. W. 575; Dunnell, Minn. Prob. Law, § 503. This is also the general rule elsewhere. In re Service's Estate, 155 Mich. 179, 118 N. W. 948; Fleming's Estate, 217 Pa. 610, 65 A. 874, 10 Ann. Cas. 826, 11 L.R.A.(N.S.) 379, and case note; 49 L.R.A.(N.S.) 1072; McClintock's Estate, 240 Pa. 543, 87 A. 703. See also notes in 74 A. L. R. 452; 85 A. L. R. 851, and note, 856, et. seq.; Fidelity Trust Co.'s Appeal, 250 Pa. 9, 95 A. 320.

But under our statute and decisions, as has been stated, this rule is not applicable to the facts before us because testatrix died without issue. We have no statutory requirement that the surviving spouse must *dissent* except as provided by § 8722. By that section failure to *dissent* within the time therein limited is deemed the equivalent of *consent*. In all other sections of the statute relating to the power to make testamentary disposition of property *consent* is the expression used. In Radl v. Radl, 72 Minn. 81, 75 N. W. 111, it was held that such consent may be given before as well as after the husband's death. That view was sustained later in State ex rel. Minnesota L. & T. Co. v. Probate Court, 129 Minn. 442, 152 N. W. 845, L. R. A. 1915E, 815. And in Hentges v. Hoye, 158 Minn. 402, 406, 197 N. W. 852, 853, it is stated:

"Unless it [consent] has been given in writing, or by her conduct she has become estopped from claiming her statutory rights, she is entitled to receive what the law gives her."

In the instant case no consent to the will could have been given by the husband, he being at all times insane. Under such circumstances the cases hold that such consent may be given by the court having jurisdiction to make an election in behalf of such afflicted spouse. In 74 A. L. R. 453, the annotation reads:

"Upon the theory that the right of election is a personal right, there is no dissent from the proposition that, in the absence of express statutory authority, the guardian or commission of an incompetent cannot make an election, but such election must be made by or under the direction of a court having chancery jurisdiction over the person or estate of the incompetent."

Numerous cases are cited in the note. But the statutory right of the surviving spouse is no more absolutely bestowed than was the former inchoate estate of dower. Yet the right of dower might become barred upon equitable principles. The basis for this view is that the donee cannot accept the benefit provided for him and at the same time decline the burden going therewith. To do so would be to defraud the design of the donor. "The party who is to take has a choice; but he cannot enjoy the benefits of both." 3 Story, Eq. Juris. (14 ed.) §§ 1451, 1453.

The supreme court of Wisconsin in Van Steenwyck v. Washburn, 59 Wis. 483, 17 N. W. 289, 48 Am. R. 532, had occasion to pass upon this question. That court carefully reviewed prior cases and came to the conclusion that the election must be made by the probate court having jurisdiction of the particular estate. Our own cases have adopted that view. State ex rel. Martin v. Ueland, 30 Minn. 277, 15 N. W. 245; Washburn v. Van Steenwyk, 32 Minn. 336, 20 N. W. 324; Culver v. Hardenbergh, 37 Minn. 225, 33 N. W. 792; Fairchild v. Marshall, 42 Minn. 14, 43 N. W. 563; State ex rel. Percy v. Hunt, 88 Minn. 404, 93 N. W. 314; Nordquist v. Sahlbom, 114 Minn. 329, 131 N. W. 323; Hentges v. Hoye, 158 Minn. 402, 197 N. W. 852; Butler v. Butler, 180 Minn. 134, 230 N. W. 575. So the question is whether in the instant case the facts justify the conclusion that there was an election in equity to take under the will and whether, if that is not established, the probate court (or on appeal the district court) should make an election. To determine that question one must have in mind the best interests of the surviving husband while still living.

Counsel for appellants state that neither the probate court nor any court on appeal may make an election in behalf of the insane spouse after his death. They say:

"When an insane man dies his status [*i. e.* the right of those who take his property] is no different from that of a sane man who dies, and the functions of the probate court with respect to him and his estate are exactly the same as they would be if he were sane at the time of his decease. * * * The powers and duties of the probate court thereafter with respect to his rights and property were exactly the same as if he had been sane at the time of his decease. The right of election which he had while living was personal to him and died with him, and the court had no more power to exercise that right for him after he was dead than it would have had if he had never been mentally afflicted."

If it be true that the right of election was purely personal and as such perished with the surviving husband, decision would be greatly simplified. But is that true? Counsel maintain on the one hand that Hentges v. Hoye, 158 Minn. 402, 197 N. W. 852, 854, supports their claim to the effect that appellants as representatives of the husband's estate have the right to come into court and claim for his estate the right of statutory inheritance and on the other hand assert that the right of election perished with the individual possessing it. The vital fact determinative of decision in the Hentges case is stated by the court thus (158 Minn. 408):

"We conclude that since Mrs. Hoye did not consent to the will and was not estopped from claiming her statutory rights, she was not deprived of them by the will, and that the appellant, as her personal representative, has succeeded to them."

So it is plain that her statutory rights could not be taken away from her by the husband's will. To these *rights* her personal representative succeeded and as such could exercise the same to bring about a taking against the will. There must necessarily be someone having the right to take, whether the taking be under the statute or under the will. The court in which the *res* is being administered is necessarily the one to which application must be made to accomplish this result, and that court too possesses under our constitution sole original jurisdiction to make effective the choice. If in the instant case the will had provided that the husband was

to receive $20,000 in cash out of testatrix's property, it would be surprising indeed if appellants would not now be championing the right to take under the will rather than against it; yet do appellants contend that there would be lacking the same opportunity of choice? The property to be disposed of in and by the probate court had to go to someone, either by virtue of the laws of descent or by the owner's will. In either event the probate court in the first instance is the tribunal determining what choice should be made, depending upon all the facts and circumstances appearing in each case. If the husband had been of sound mind, his choice, if promptly made, would have been final, assuming election by equitable estoppel to be absent. If the husband's guardian had made application while the ward was living, it is clear that the court would have to direct a taking either under the statute or under the will. Of necessity the ward's best interests would be the determinative factor in guiding the court when making the choice. In either event the court's action would be necessary to finality. Upon what principle in law or logic can it be said that such jurisdiction is lost by the death of the surviving spouse while the *res* is still being administered by the only court having jurisdiction? Appellants' claim to share in Mrs. Carey's property was brought to the court's attention and its jurisdiction invoked to procure the share that would have come to the husband if the wife had died intestate. To bring about that result could mean nothing more or less than an election to take under the statute and against the will. Upon the facts presented to that court it determined for appellants. If that court had determined otherwise the same right to review by appeal could undoubtedly be invoked and applied. Appellants cannot, any more than could the husband if still living, take both under the statute and under the will. So it is clear that an election must be made. No court other than the probate court has original jurisdiction to determine that question. That court found and determined "that said Edward Carey did not consent to said will and was not estopped from claiming his statutory rights," and as a legal conclusion adjudged and decreed that appellants as administrators should take one-third of Mrs. Carey's estate remaining

after payment of debts, expenses of funeral and of administration, plus $500 selected by them out of her estate. Upon appeal the district court upon undisputed facts determined otherwise. That court had the same duty to perform as had the probate court in the first instance. The trial there was *de novo*. Upon that court rested the duty of decision free from any presumption for or against the result reached in the court of first instance. Washburn v. Van Steenwyk, 32 Minn. 336, 355, 20 N. W. 324; Dunnell, Minn. Prob. Law, § 68. We are bound by the facts and cannot go beyond them nor limit their force.

"Where a case is submitted for decision upon a stipulation of all the facts, neither party will be heard on appeal to suggest that the facts were other than as stipulated or that any material fact was omitted." In re Estate of Monfort, 193 Minn. 594, 259 N. W. 554.

Guided, as we must be, by established precedent, we feel that what the Wisconsin court said in Van Steenwyck v. Washburn, 59 Wis. 483, 507, 17 N. W. 294, 295, fits the present facts:

"But upon what principles must the court proceed, or what considerations should be regarded, in making that election? The counsel for the respondents insist that the principle upon which an election is made by a court for a person under disability, is to take that property which is the most valuable. That may afford a just and proper rule upon which to proceed in most cases. But we think it would not be wise to act upon that principle in the case before us for these reasons: Gov. Washburn, at the time of his death, owned large properties in the states of Wisconsin, Minnesota, and Missouri. Had he died intestate it is said his widow would have taken $600,000 or $700,000 as her share of his estate. It was assumed on the argument, and such doubtless is the fact, that the executors have set aside $5,000 a year to be expended for her support. If this amount should be doubled or trebled, it is plain that the sums expended for her benefit would only be a small fraction of the share she would take by law. Mrs. Washburn was sixty-two years of age when this bill was filed. She has been insane,

142

without a lucid interval, for more than twenty-five years. There is no ground for a rational hope or expectation that she will ever be any better. Her mind has rested too long in the deep eclipse to justify or warrant such a hope. Medical science and skill long since exhausted their resources in efforts to cure her. Presumably she is incurably and hopelessly insane; and if she is ever restored to her reason, ever again clothed and in· her right mind, to all human judgment that change must be brought about by an agency higher than that of man. She can have no conception of the value or use of money. If 'the wealth of Ormus and of Ind' were laid at her feet she would not distinguish it from the dust. She cannot use money; she cannot manage it; its possession would be of no earthly benefit or advantage to her. Provision is made in the will for all her wants and necessities; for medical care and attendance; for all other care; in short, for everything which will promote her comfort and physical health. Does not this meet the demands of every equitable requirement, so far as Mrs. Washburn is concerned? Further, cannot the court pay some regard to the benevolent intentions of the testator towards his kindred by blood, and those having claims on his bounty; to his munificent bequests for admirable and noble public charities, such as establishing a public library, an orphan asylum for young and destitute orphans; to the fact that he made a will in and by which he disposed of his entire estate in a manner which seemed to him just and right? Is it permissible for the court to consider any of these matters, or must its discretion and judgment be limited to the sole inquiry, which property is the more valuable? It is evident if the court should elect what the law gives the widow in case of intestacy that the intentions of the testator will in a measure be defeated. Such an election would greatly interfere with the scheme of the will. Defeating a will, in any substantial provision, is much like breaking it. It is defeating it *pro tanto*. The right to dispose of one's estate in accordance with his own wishes is a sacred right, which a court of equity will not disregard or destroy."

State ex rel. Percy v. Hunt, 88 Minn. 404, 93 N. W. 314; Dunnell, Minn. Prob. Law, § 512.

What would the husband have done if mentally competent to act? Is it probable that he would have taken a third interest under the statute of descent and thereby relinquished his right to take it all if his necessities should so require? Would he have made for naught the well designed objects and purposes so carefully planned by his wife? Is it not obvious that his own interest required acceptance? These people had lived many years together and had met and faced life's many trials, troubles, and vicissitudes. That they both were faithful and devout Christians is manifested by the wife's liberal provisions for the saying of masses for the repose of their souls; her thoughtful care respecting the procurement of a suitable monument for their graves; the procurement of a suitable burial lot and the setting aside of a liberal sum for its perpetual care and maintenance, and the further provision that the husband's funeral expenses should be paid for out of her estate and charged therein as an item of funeral expense. As a matter of fact it appears in the stipulated facts that the executors have paid these and have received appropriate credit in their accounting therefor. Another thing, not to be lightly regarded, is the fact that amongst the probate files is found a stipulation to the effect that the life estate of the husband was appraised at $14,000, and upon that basis the inheritance tax was computed and paid. This appraisal did not take into account the right of the trustees under the will to encroach upon the principal sum. The assets of the estate for distribution show a total of less than $37,000, of which less than $4,000 is real estate, the balance being real estate mortgages and cash. So that, even if we were to look at the matter from the purely money and materialistic values, it would have been to the husband's interest to take under the will rather than against it.

We are inclined to agree with appellants' counsel in this statement: "When an insane man dies his [property] status is no different from that of a sane man who dies." This being so, it would seem that the husband could not over a period of nearly nine months receive the benefits provided for him by the terms of his wife's will without thereby electing to take under it. This is

especially true where, as here, he knew that he would be entitled to receive everything that she left if his requirements necessitated such taking. In addition thereto, he would also have known that his body was to be buried with that of his wife in her burial lot paid for out of her money; that a costly monument for both would be provided from the same source; that $1,000 of her estate was to be devoted to the saying of masses for the peaceful repose of the souls of both of them; that a liberal fund was set aside out of her estate with which to maintain and beautify their burial lot. It seems to us grossly inequitable now to permit his administrators to come in and take advantage of these benefits and insist upon taking under the law. At least the question of whether to take under the will or against it was squarely presented. The provisions of the wife's will in respect of acquisition of the burial lot, the purchase and erection of a monument, the setting aside of a fund for the permanent maintenance and improvement of the cemetery lot, and the saying of masses for the benefit of both husband and wife, all these provisions are so interwoven with her own interests that it is practically impossible to say just what portion, if any, inures to the benefit of the husband and his estate. We think Ambrose v. Rugg, 123 Ohio St. 433, 175 N. E. 691, 74 A. L. R. 449, sustains our view. In that case the death of an incompetent widow before an election was made in her behalf and before the expiration of the period within which such election might be made was held by the court not to prevent the court from determining what would be for the best interests of her estate. In 2 Page, Wills (2 ed.) § 1199, the author states:

"If the beneficiary has made no election in his lifetime, the right which he would have had if he had lived and made no election is the right which passes to his heirs or personal representative."

In support thereof are cited Flynn v. McDermott, 183 N. Y. 62, 75 N. E. 931, 2 L.R.A.(N.S.) 959, 111 A. S. R. 687, 5 Ann. Cas. 81, and Ludwick's Estate, 269 Pa. 365, 112 A. 543. This court in Hentges v. Hoye, 158 Minn. 402, 197 N. W. 852, inferentially at least, so determined. There the surviving wife died within eight days after the

death of her husband, and as a consequence it was held that her death occurred so soon after her husband's decease that she could not be said to have had adequate time within which to make up her mind as to what choice to make. But if the right survived, and we there held that it did, then it is not a question of authority to make decision but rather and only whether under the particular circumstances, to be determined as a fact in each particular case, the right should be exercised. We conclude that the trial court arrived at the right result on this phase of the case.

Only one further question remains for consideration. Appellants have assigned as error the refusal of the court below to allow them the sum of $500 out of the personal property belonging to the widow's estate as a personal selection authorized, so appellants claim, under 2 Mason Minn. St. 1927, § 8726. That section, as far as here material, reads:

"1. The widow shall be allowed the wearing apparel of her deceased husband, his household furniture not exceeding five hundred dollars in value, and other personal property not exceeding the same amount, both to be selected by her; and she shall receive such allowances when she takes the provisions made for her by her husband's will as well as when he dies intestate. * * *

"7. All the provisions of this section shall apply as well to a surviving husband as to a surviving wife."

The right to this allowance is absolute and of course survives so that the personal representatives of the surviving spouse succeed thereto. See Benjamin v. Laroche, 39 Minn. 334, 40 N. W. 156; Sammons v. Higbie's Estate, 103 Minn. 448, 115 N. W. 265; Stromberg v. Stromberg, 119 Minn. 325, 138 N. W. 428; Barrett v. Heim, 152 Minn. 147, 188 N. W. 207; In re Estate of Fults, 177 Minn. 334, 336, 225 N. W. 152.

The judgment appealed from will be modified so that appellants are allowed $500 out of the cash assets of Mrs. Carey's estate.

As so modified, the judgment is affirmed.

UPON APPLICATION FOR REARGUMENT.

On April 26, 1935, the following opinion was filed:

146

Per Curiam.

Appellants have petitioned for rehearing. They assert that by the decision herein they have been deprived "of property without due process of law in contravention of the fourteenth amendment to the constitution of the United States." Upon due consideration had, we are of opinion, and so hold, that there is no justification for appellants' claim in this regard. The facts were stipulated. Appellants sought and obtained in the probate court, upon their own petition in that behalf, the relief which they deemed themselves entitled to receive. Upon appeal, the district court thought otherwise. The cause has been decided here with due regard to the rights of all parties interested. Nothing new has been presented in the petition for rehearing; hence the same is denied.